IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN LYNN WILSON (THOMAS), et al., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:18-CV-0854-D |
| VS. | § § | |
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASSTHROUGH CERTIFICATES, SERIES 2006-QS5, et al., | § § § § § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from an attempted foreclosure, defendants Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-backed Passthrough Certificates, Series 2006-QS5 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") move to dismiss the claims of *pro se* plaintiffs Susan Lynn Wilson (Thomas) and Tommy Thomas for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion and grants the Thomases leave to replead.

I

In 2006 the Thomases obtained a home equity loan from Wachovia Bank ("Wachovia") secured by the Thomases' residence located on Berkshire Lane in Dallas.

They became delinquent on the loan in 2008. The following year, the Thomases' loan servicer, Homecomings Financial, invited the Thomases to apply for a loan modification. The Thomases applied, and a new loan servicer—GMAC Mortgage, LLC ("GMAC")—approved their application. Under the terms of the modification agreement, if the Thomases successfully made three on-time payments in an agreed-upon reduced amount, the reduced payment amount would become permanent. The Thomases allege that although they upheld their end of the bargain, GMAC did not: GMAC returned the third on-time payment, and Deutsche Bank (the assignee of the lien against the Thomases' residence) attempted to foreclose. Deutsche Bank nonsuited (i.e., voluntarily dismissed) the initial foreclosure action in 2013, but then initiated a new foreclosure in 2015. The first amended complaint[1] does not specify how the 2015 foreclosure action concluded, but defendants commenced the foreclosure process again in March 2017.

The present case is not the first time the Thomases have challenged defendants' power to foreclose. In 2015 they filed a lawsuit in Texas state district court attempting on statute-of-limitations grounds to block defendants from foreclosing. *See Wilson v. Deutsche Bank Tr. Co. Ams.*, No. 3:15-CV-3536-N, at *1 (N.D. Tex. June 29, 2016) (Godbey, J.). Defendants removed the action to this court, and Judge Godbey dismissed the Thomases'

---

[1]Although the Thomases' most recent complaint is entitled "Plaintiffs['] First Amended Pleading," it functions as a first amended complaint. The court will refer to it accordingly. *See Kirby v. Saxon Mortg. Servs., Inc.*, 2009 WL 2601943, at *1 & n.2 (N.D. Tex. Aug. 21, 2009) (Fitzwater, C.J.) (referring to plaintiff's "re-plead" as his amended complaint).

claims. *Id.* at 6.

The Thomases filed the instant lawsuit—again in Texas state district court—after submitting loss mitigation applications to their current loan servicer, Ocwen, in September 2016 and March 2017. According to the Thomases, even though Ocwen acknowledged receipt of a completed application in April 2017, defendants continued to attempt to foreclose on the Thomases' residence. The Thomases seek damages and injunctive relief on a number of grounds. They allege that defendants lack authority to foreclose because the chain of title from Wachovia to Deutsche Bank is insufficiently proved and contains void transfers; the assignments in the chain of title are fraudulent under Tex. Civ. Prac. & Rem. Code Ann. § 12.002 (West 2017); and defendants have in various ways violated the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), the Gramm-Leach-Bliley Act ("GLBA"), Pub. L. No. 106-102, 113 Stat. 1338 (1999), and the Truth-in-Lending Act ("TILA"), Pub. L. No. 90-321, 82 Stat. 146 (1968). Defendants removed the case to this court, and now move to dismiss on the grounds of res judicata[2] and failure to state a claim on which relief can be granted.

---

[2] "[G]enerally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005); *see also Webb v. Town of St. Joseph*, 560 Fed. Appx. 362, 366 n.4 (5th Cir. 2014) (per curiam) ("[I]t is not clear that the district court was even correct to consider Defendants' res judicata defense in the motion to dismiss."). But "[d]ismissal under [Fed. R. Civ. P. 12(b)(6)] on res judicata grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Stone v. La. Dep't of Revenue*, 590 Fed. Appx. 332, 335-36 (5th Cir. 2014) (per curiam) (quoting *Murry v. Gen. Servs. Admin.*, 553 Fed. Appx. 362, 364 (5th Cir. 2014) (per curiam)). In practice, it seems that courts *do* consider the res judicata defense at the Rule 12(b)(6) stage by taking judicial notice of the

II

Under Fed. R. Civ. P. 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, the Thomases must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do

---

judgment in the prior lawsuit. *See, e.g., Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, 410 (5th Cir. 2013) (per curiam); *Wicker v. Seterus, Inc.*, 2018 WL 4856771, at *7-8 (W.D. Tex. Oct. 4, 2018); *Crook v. Galaviz*, 2015 WL 502305, at *4-5 (W.D. Tex. Feb. 5, 2015); *Millionway Int'l, Inc. v. Black Rapid, Inc.*, 2013 WL 6230366, at *2 (S.D. Tex. Dec. 2, 2013). This court has itself previously granted motions to dismiss on *res judicata* grounds. *See, e.g., Helms v. Wells Fargo Bank, N.A.*, 2013 WL 12188349, at *2 (N.D. Tex. Dec. 17, 2013) (Means, J.); *Yeckel v. The Carl B. & Florence E. King Found. Retirement Pension Plan & Welfare Benefit Program*, 2006 WL 2434313, at *3-7 (N.D. Tex. Aug. 21, 2006) (Fitzwater, J.). And at least one judge of this court has characterized the above-quoted language from *Test Masters* as *dicta*. *See Rocky Mountain Choppers, LLC v. Textron Fin. Corp.*, 2012 WL 6004177, at *5 (N.D. Tex. Dec. 3, 2012) (McBryde, J.). The court therefore could likely consider defendants' res judicata argument as presented. But because the court is dismissing the Thomases' claims on other grounds, it need not consider whether their action would be barred based on the affirmative defense of res judicata.

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

In their reply brief, defendants contend that the Thomases have failed to respond to a number of defendants' arguments for dismissal, and therefore have conceded them. They cite the proposition that "[w]hen a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived." *Roberts v. Overby-Seawell Co.*, 2018 WL 1457306, at *11 (N.D. Tex. Mar. 23, 2018) (Lindsay, J.) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)). The court expresses no opinion on whether, when plaintiffs completely fail to address any of the arguments for dismissal of one of their claims, they have abandoned that claim. But contrary to defendants' characterization, the Thomases at least *attempt* to address each of the issues identified in the "Statement of Issues to be Decided" section of defendants' motion to dismiss. *Compare* Ds. Mot. Dism. 1-2, *with* Ps. Resp. 9-13. The fact that the Thomases do not always respond thoroughly or effectively does not evince an intent

to abandon any claims—particularly given the Thomases' status as *pro se* litigants. *Cf. Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978) (per curiam) ("[T]his court and others have recognized that those unskilled in the law should not be held to strict standards of pleading."). The court will not dismiss any of the Thomases' claims on the ground that they have waived them due to insufficient briefing.

IV

The court next considers the sufficiency of the Thomases' allegations on the merits.

A

The Thomases have not plausibly pleaded that defendants lack authority to foreclose on the Thomases' residence. The question turns on the validity of two assignments of the Thomases' note and deed of trust: one in 2008 from Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee" for Wachovia to Deutsche Bank "as trustee"; and one in 2012 from Deutsche Bank "as trustee, by Residential Funding Company, LLC, FKA Residential Funding Corporation, attorney-in-fact" to Deutsche Bank "as trustee for RALI 2006-QS5." *See* 1st Am. Compl. Ex. B (capitalization omitted).

The Thomases allege that the 2008 assignment is void for several reasons. First, citing *Deutsche Bank National Trust Co. v. Burke*, 286 F.Supp.3d 802 (S.D. Tex. 2017), they contend that the 2008 assignment is void because MERS executed the assignment document in its capacity as "nominee" rather than as "beneficiary." 1st Am. Compl. ¶ 6. But the Fifth Circuit recently reversed the magistrate judge's opinion in *Burke*, rejecting the argument that this semantic difference has any impact on MERS's authority to convey the note and deed

of trust. *See Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 549-50 (5th Cir. 2018) (per curiam). This court, applying Fifth Circuit precedent, rejects this argument as well.

The Thomases also allege that the 2008 assignment is fraudulent, and therefore void, because it was "robo-signe[d]" by MERS employee Jeffrey Stephan ("Stephan"). 1st Am. Compl. ¶ 6. But where there is a "signed, notarized assignment document that has also been recorded by the county clerk," the assignee can foreclose even if the assigning document was robo-signed. *See Wood v. Bank of Am.*, 2015 WL 2378958, at *7 (N.D. Tex. Apr. 23, 2015) (Cureton, J.) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 252 (5th Cir. 2013)), *rec. adopted*, 2015 WL 2383330, at *1 (N.D. Tex. May 18, 2015) (O'Connor, J.). The Thomases themselves have submitted a notarized, recorded assignment document as an attachment to the first amended complaint. *See* 1st Am. Compl. Ex. B; *see also Hawk v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 8164779, at *1 n.1 (N.D. Tex. Dec. 8, 2015) (Fitzwater, J.) (explaining that court may generally consider documents attached to complaint in deciding Rule 12(b)(6) motion). Therefore, the Thomases' robo-signing argument fails.

In addition to the allegations in the first amended complaint, the Thomases argue in their response brief that, because the 2008 assignment document does not include a MERS identification number ("MIN")—as required by a checklist taken from the "MERS Registry System Handbook"—Stephan lacked authority to execute the document, rendering it invalid. Ps. Resp. 3. Assuming *arguendo* that the court can consider this contention (and the evidence in support of it) as presented, the court is not persuaded. The court has found no instance of any federal court granting relief on a similar basis. And the sole authority the

Thomases cite in support of their argument, *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532 (N.Y. App. Div. 2011), is inapposite. The Thomases' MIN theory thus has minimal, if any, support.

More important, even if Stephan *did* lack authority to assign the deed of trust and note on behalf of MERS, the Thomases cannot challenge the assignment on this basis. A putative agent's lack of authority to assign a principal's interest merely renders the assignment *voidable* at the option of the principal, not *void*. *See Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 226 (5th Cir. 2013). Under Texas law, "the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only." *Id.* (alterations in original) (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975, no writ)). The omission of a MIN from the assignment documents therefore does not entitle the Thomases to relief.

As to the 2012 assignment, the Thomases allege that Jeannette Piccone, who executed the assignment document, lacked authority to do so. Again, assuming this to be true, it would only render the 2012 assignment *voidable* at the option of the assignor, *not void*. *See id.* The Thomases cannot challenge the assignment on this basis.

The Thomases also allege that "[n]o proof has been filed of the trust's right to transfer [p]roperty," and that defendants have not "proved chain of title." 1st Am. Compl. ¶¶ 5, 7. These allegations fail for two reasons. First, they are too conclusory to credit in the context of a Rule 12(b)(6) motion to dismiss—they are unsupported by facts showing *how* defendants

have failed to prove chain of title. *See Iqbal*, 556 U.S. at 678. Second, these allegations impermissibly attempt to shift the burden of proof to defendants. It is the Thomases who seek relief, in the form of $1.25 million in damages, the removal of all liens from their property, and an injunction against future foreclosure actions. They must prove that defendants are liable; defendants need not prove that they are *not* liable.[3] The Thomases have thus failed to plausibly allege that defendants lack authority to foreclose because of some defect in the chain of title.[4]

B

The Thomases maintain that the 2008 and 2012 assignments violate Tex. Civ. Prac. & Rem. Code Ann. § 12.002, which "prohibits, in relevant part, presenting or using a document with knowledge that it was a fraudulent lien or claim against real property, with intent for the document to be given legal effect, and intent to cause financial injury." *Colton v. U.S. Bank Nat'l Ass'n*, 2013 WL 1934560, at *5 (N.D. Tex. May 10, 2013) (Fitzwater, C.J.). They contend that the 2008 and 2012 assignments were fraudulent, and therefore

---

[3]Similarly, the Thomases allege that, in a separate foreclosure action, defendants have failed to plead affirmatively that they have authority to foreclose on the Thomases' residence. While this might (or might not) constitute a defense to foreclosure in that parallel action, it does not provide this court a basis to award damages or injunctive relief to the Thomases, or to clear all liens from their property.

[4]In addition to their arguments regarding chain of title, the Thomases allege that because defendants do not have the original, signed promissory note, they lack standing to foreclose. This argument—colloquially known as the "show-me-the-note theory"—has been rejected by the Fifth Circuit. *See Martins*, 722 F.3d at 253-54 (quoting *Wells v. BAC Home Loans Servicing, L.P.*, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011)).

violate § 12.002, primarily because the 2008 assignment was robo-signed.

Preliminarily, it is not clear that an assignment even qualifies as a "lien" for the purposes of § 12.002. "[T]here is currently a split in authority among the federal district courts in [the Fifth Circuit] that have considered the issue." *Golden v. Wells Fargo Bank, N.A.*, 557 Fed. Appx. 323, 327 n.2 (5th Cir. 2014) (per curiam). Assuming *arguendo* that an assignment can violate § 12.002, the Thomases have failed to adequately plead the requisite intent to cause injury. They allege no facts that would enable the court to draw the reasonable inference that the assignments were made for the purpose of harming them, or for any reason other than ordinary business purposes. "A bank's usage of an assignment for business purposes 'hardly equates to an argument that [the bank] intended to inflict financial injury or mental anguish.'" *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014) (per curiam) (quoting *Golden*, 557 Fed. Appx. at 327). The Thomases have therefore failed to state a plausible claim under § 12.002.

C

The Thomases allege that defendants violated the GLBA by failing to safeguard their personal financial information. Assuming this to be true, it does not necessarily follow that the Thomases, as private individuals, can bring suit under this statute. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). In other words, private plaintiffs cannot sue to

enforce federal law unless Congress has expressly or impliedly authorized them to do so.[5] "Federal courts have determined that . . . the GLBA, by [its] terms, [does] not create a private right of action." *Lowe v. ViewPoint Bank*, 972 F.Supp.2d 947, 954-55 (N.D. Tex. Sept. 18, 2013) (Fish, J.) (collecting cases). Therefore, the Thomases' GLBA claim must be dismissed.

D

The Thomases allege that the 2009 loan modification offer from GMAC violated the TILA because GMAC ultimately did not honor it. They also assert that "[o]ther misrepresentations also occurred" from 2009 to the present, and that they were "subjected to trickery, fraud," and other unfair practices. 1st Am. Compl. ¶¶ 19, 21. These allegations are insufficient to plead a plausible claim.

Any TILA claim based on the 2009 loan modification offer is time-barred. Actions for damages under the TILA must be brought within one year. *See* 15 U.S.C. § 1640(e). Actions for rescission must be brought within three years. *See id.* § 1635(f). The Thomases cannot state a claim under the TILA for alleged violations that occurred nine years ago.[6] As

---

[5]There are a few inapposite exceptions to this general proposition. For instance, the *Bivens* doctrine permits actions for damages against federal officials for certain constitutional violations. *See generally Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843 (2017). And plaintiffs seeking to enjoin state and federal officials from taking illegal actions can, by default, invoke the inherent "equitable powers" of the federal courts. *See Armstrong v. Exceptional Child Ctr., Inc.*, ___ U.S. ___, 135 S. Ct. 1378, 1384-85 (2015).

[6]The court recognizes that the statute of limitations, like res judicata, is an affirmative defense. *See* Rule 8(c)(1). But because the viability of the defense is clear on the face of the first amended complaint, the court may dismiss the Thomases' claim based on this defense.

to any subsequent violations that might have occurred, the first amended complaint is too vague to state a plausible claim on which relief can be granted. Conclusory assertions like "[o]ther misrepresentations also occurred during the nine year period" do not constitute factual allegations giving rise to a plausible claim. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Thomases' TILA claim therefore fails.

E

Although the Thomases do not expressly refer to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), they make allegations that sound very much like a RESPA claim: that defendants failed to "respond to a completed loss mitigation package" in 2016 or 2017, and that they engaged in "[d]ual [t]racking" by continuing to pursue foreclosure in 2017 while simultaneously reviewing the Thomases' loss mitigation application. 1st Am. Compl. ¶¶ 12-13, 17, 26. These actions, if substantiated, could potentially violate 12 C.F.R. § 1024.41, which is privately enforceable via § 6(f) of RESPA. *See Ruiz v. PennyMac Loan Servs., LLC*, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.). As pleaded, however, the Thomases' allegations do not state a plausible claim under RESPA.

The regulation governing loss mitigation applications, 12 C.F.R. § 1024.41, specifies deadlines for reviewing timely loss mitigation applications and requirements for notifying

---

*See Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351-52 (5th Cir. 2011) (per curiam). In other words, the Thomases have "pleaded [themselves] out of court" with respect to their TILA claim. *Robinson v. Dallas Cty. Cmty. Coll. Dist.*, 2015 WL 1879798, at *1 n.2 (N.D. Tex. Apr. 24, 2015) (Fitzwater, J.).

borrowers in writing, within 30 days of receipt of a complete loss mitigation application, which loss mitigation options, if any, a loan servicer will offer the borrower, or the specific reasons for denying a complete loss mitigation application. *See* 12 C.F.R. § 1024.41(c)(1)(ii), (d). Section 1024.41(g) generally prohibits servicers from engaging in "dual tracking"—that is, pursuing foreclosure and reviewing a borrower's loss mitigation application at the same time. But § 1024.41(i) specifies that a servicer is "only required to comply with the requirements of [§ 1024.41] for a single complete loss mitigation application for a borrower's mortgage loan account."[7]

Here, the Thomases do not plead that the loss mitigation application they submitted in 2016 or 2017 was the first complete loss mitigation application they sent to Ocwen. For this reason alone, the Thomases' RESPA claim must be dismissed. *See Ruiz*, 2018 WL 4772410, at *2 (collecting cases).[8]

---

[7]Section 1024.41(i) was amended effective October 2017. *Ruiz*, 2018 WL 4772410, at *2 n.1. But the Thomases' most recent loss mitigation application was complete as of April 26, 2017. The amendment to § 1024.41(i) does not apply retroactively. *See Smith v. JPMorgan Chase Bank, N.A.*, 2018 WL 879276, at *2 n.1 (N.D. Tex. Jan. 23, 2018) (Toliver, J.) (citing *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 358 (5th Cir. 2016) (per curiam)), *rec. adopted*, 2018 WL 837762, at *1 (N.D. Tex. Feb. 13, 2018) (Kinkeade, J.). Therefore, the court will apply the pre-amended version of § 1024.41(i).

[8]The Thomases' 2009 loss mitigation application does not absolve Ocwen of its responsibilities under RESPA. The plain text of the regulation states that "[*a*] *servicer*" need only comply with the requirements of § 1024.41 once. 12 C.F.R. § 1024.41(i) (emphasis added). The Thomases' loan servicer in 2009 was GMAC, not Ocwen.

> A transferee servicer and a transferor servicer . . . are not the same servicer. Accordingly, a transferee servicer is required to comply with the applicable requirements of section 1024.41

Moreover, to state a claim under § 6(f), plaintiffs "must plead sufficient facts for the court to draw the reasonable inference that [they] suffered damages resulting from [the defendants'] violation of § 1024.41." *Ruiz*, 2018 WL 4772410, at *3 (emphasis omitted) (citing *Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx. 790, 795 (5th Cir. 2014) (per curiam)). The Thomases have not alleged that they suffered any particular damages traceable to defendants' supposed RESPA violations. Therefore, they have failed to state a plausible claim under § 6(f).

F

The Thomases allege that defendants violated Dodd-Frank in various ways. For the most part, the Thomases do not identify the specific sections of Dodd-Frank under which they are suing.[9] Defendants maintain that, by failing to cite specific statutory provisions, the Thomases have not provided sufficient notice of what claims they are actually bringing. This

---

upon receipt of a loss mitigation application from a borrower whose servicing the transferee servicer has obtained through a servicing transfer, even if the borrower previously received an evaluation of a complete loss mitigation application from the transferor servicer.

Consumer Financial Protection Bureau's Official Staff Commentary on Regulation X, 2014 WL 2195779, at *13 (June 2018); *see also Pierson v. Ocwen Loan Servicing, LLC*, 2017 WL 10110296, at *3 (N.D. Tex. June 22, 2017) (Godbey, J.) (stating the same).

[9]The Thomases *do* specifically invoke § 1413 of Dodd-Frank, which consumers may assert as a defense to foreclosure. *See* 15 U.S.C. § 1640(k). This section applies when a lender has violated 15 U.S.C. § 1639b(c)(1)-(2) or § 1639c(a). But the Thomases do not allege any facts suggesting that defendants, or anyone else, violated the relevant statutes. The court dismisses this claim.

- 14 -

argument lacks force. *See Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (reversing holding of court of appeals that plaintiffs seeking relief under 42 U.S.C. § 1983 must cite the statute expressly, and concluding that, even after *Twombly* and *Iqbal*, plaintiffs need only plead the *factual* basis of their claims). The court therefore declines to dismiss the Thomases' Dodd-Frank claims on the ground that they did not cite the *legal* basis for their claims.[10]

Defendants also cite the proposition that, "with narrow exceptions . . . the Dodd-Frank Act does not provide for a private right of action by borrowers against lending institutions." Ds. Mot. Dism. 10-11 (quoting *Wilson v. Beneficial Mortg. Co.*, 2017 WL 489685, at *5 (M.D. Pa. Jan. 18, 2017)). They maintain that the Thomases' failure to allege that their claims are privately enforceable mandates that these claims be dismissed. Unlike the GLBA, however, some provisions of Dodd-Frank *are* privately enforceable. For example, Dodd-Frank amends the TILA to impose certain appraisal requirements on creditors. *See* Dodd-Frank § 1471, 15 U.S.C. § 1639h. These requirements are enforceable via 15 U.S.C. § 1639h(e) and § 1640(a).[11] The Thomases' failure to specifically allege the existence of a private right of action that authorizes their claims does not mean they have failed to plead a

---

[10]For the purposes of repleading, however, the Thomases should bear in mind that citing specific statutory provisions *would* make it easier for the court to determine whether they are entitled to relief.

[11]Indeed, it appears that the Thomases are attempting to state a claim under § 1639h. They allege that defendants used "a non-licensed appraiser from Altisource in Missouri instead of a licensed Texas appraiser as required by law" when valuing the Thomases' residence in 2016. 1st Am. Compl. ¶ 11.

plausible claim. *See Johnson*, 135 S. Ct. at 347. The court therefore declines to grant defendants' motion to dismiss on this ground.[12]

G

In summary, the court has so far dismissed the following claims: (1) defendants lack authority to foreclose on the Thomases' residence; (2) the 2008 and 2012 assignments violate Tex. Civ. Prac. & Rem. Code Ann. § 12.002; (3) defendants violated the GLBA; (4) defendants violated the TILA; (5) defendants violated RESPA and its implementing regulations; (6) the Thomases are entitled to foreclosure protection under 15 U.S.C. § 1640(k); (7) defendants failed to comply with a state district court order; and (8) defendants are liable for a lack of accountability. *See* 1st Am. Compl. ¶¶ 5-10, 12-15, 17, 19-26, 28, 31.

V

Defendants also move to dismiss on the basis that the Thomases fail in their first amended complaint to distinguish between Deutsche Bank and Ocwen. They contend that "[w]here a complaint simply lumps defendants together, as is the case here, and fails to distinguish their conduct," the complaint does not provide notice of what each defendant did wrong. Ds. Mot. Dism. 6; *see Chyba v. EMC Mortg. Corp.*, 450 Fed. Appx. 404, 406 (5th

---

[12]In addition to the above, the Thomases seek to hold defendants liable for a "Lack of Accountability." 1st Am. Compl. ¶¶ 22-25. But a lack of accountability is not a cognizable claim. The Thomases also allege that defendants failed to comply with a state district court order to send a representative who had decisionmaking authority to a mediation. While this allegation might (or might not) have been grounds to seek a contempt order from the state court, it does not enable this court to grant the Thomases the relief they seek. These claims are therefore dismissed.

Cir. 2011) (per curiam) ("Plaintiff's vague allegations of malfeasance by a global group of unspecified 'defendants'—without alleging any particular acts by the present Defendant—provided an additional reason to dismiss the suit."); *Bittick v. JPMorgan Chase Bank, NA*, 2012 WL 1372126, at *7 (N.D. Tex. Apr. 18, 2012) (McBryde, J.) ("[P]laintiff does not distinguish between Chase and Imperial when making his TILA allegations. It is not possible for the court to discern from the Complaint which allegations are directed at which defendant."); *Washington v. U.S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 770 (N.D. Tex. 1996) (Solis, J.) ("Plaintiff may not rely on such global allegations that Defendants, as a group, committed such acts or omissions."); *see also Jackson v. Ocwen Loan Servicing, LLC*, 2018 WL 1001859, at *4-5 (N.D. Tex. Jan. 8, 2018) (Horan, J.) ("As to Ms. Jackson's remaining claims, the undersigned concludes that Ms. Jackson's allegations against 'Defendants' are too general to state a claim."), *rec. adopted*, 2018 WL 949226, at *1 (N.D. Tex. Feb. 16, 2018) (Fish, J.).

The court does not read the foregoing cases or other pertinent authorities to suggest that there is a *per se* rule that forecloses a pleader from attributing actions to an undifferentiated group of "defendants."[13] For example, where more than one defendant allegedly committed the same act together, a complaint is not defective for the reason that it asserts that all defendants committed that same act, without identifying each individual

---

[13]The court recognizes that group pleading is not permitted under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. *See, e.g., Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

defendant. But many of the acts alleged in the first amended complaint inherently could have been committed by only *one* defendant. Where the first amended complaint attributes such an act to both defendants, it fails to plead a plausible claim against either defendant in particular.

Turning to the claims that have not yet been dismissed, the court finds them to be deficient because they ascribe singular acts to both defendants, or are otherwise too vague or internally contradictory to provide notice. *See* 1st Am. Compl. ¶ 11 ("Defendants are in [v]iolation of Dodd Frank . . . by using a non-licensed appraiser[.]"); *id.* ¶ 16 ("Defendants are in [v]iolation of Dodd Frank to respond to a request for a sales price[.]"); *id.* ¶ 18 ("Defendants . . . prohibit[ed] [the Thomases] from speaking to relationship managers in the United States by referring them back to *offshore relationship managers*[.]");[14] *id.* ¶ 29

---

[14]This allegation appears to simultaneously attribute the same action to both defendants and solely to Ocwen. It is thus internally contradictory as well as vague—providing an additional reason to dismiss the claim. While a complaint may allege theories and claims in the alternative, *see* Rule 8(d), the Thomases do not indicate that they are attempting to do so here. *See CapStar Bank v. Perry*, 2018 WL 3389712, at *12 (M.D. Tenn. July 12, 2018) ("[W]hile pleading alternative legal theories is appropriate, Perry does not have the prerogative to plead conflicting facts[.]"); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 2014 WL 5460450, at *5 (N.D. Tex. Oct. 27, 2014) (Boyle, J.) (concluding that where plaintiff's alleged timeline contradicted itself, allegations failed to suggest that defendants had agreed to fix prices); *cf. Samsung Elecs. Am., Inc. v. Yang Kun "Michael" Chung*, 2018 WL 1532383, at *7 (N.D. Tex. Mar. 29, 2018) (Fitzwater, J.) ("Under Rule 8(d), a party should not assert inconsistent or alternative allegations 'unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses.'" (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1285, at 741 (3d ed. 2004))); *Qatalys, Inc. v. Mountain Med. Techs., Inc.*, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) (Lindsay, J.) ("When a plaintiff's allegations in a complaint directly contradict language in a contract that formed the basis of the lawsuit, a court need not give credence to those allegations.");

("Violation of Dodd Frank placing [the Thomases] in expensive forced place insurance[.]");[15] *id.* ¶ 30 ("Violation of Dodd Frank for the ballooning of the original note of $684,000, paid to $671,000. Defendants now claim the amount owed is approximately $1.3 million[.]"). These remaining claims must therefore be dismissed.

VI

Although the court is dismissing the Thomases' action, it also grants them leave to replead some, but not all, of their claims. It is the practice of this court to offer litigants "at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable[.]" *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (emphasis added) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

Some of the deficiencies identified above are incurable. The following claims are therefore dismissed with prejudice: that defendants lack authority to foreclose on the basis of the arguments discussed *supra* in § IV(A); that defendants violated the GLBA; that the 2009 loan modification offer violated the TILA; that defendants should be held liable for a "lack of accountability"; and that defendants should be held liable for violating a Texas state district court order. As to all other claims, the court grants the Thomases leave to replead.

---

*Hayward v. Chase Home Fin., LLC*, 2011 WL 2881298, at *7 (N.D. Tex. July 18, 2011) (Fish, J.) (granting motion for more definite statement because, *inter alia*, plaintiff's complaint "contain[ed] apparent contradictions.").

[15]Paragraph 29 contains no subject at all. It is impossible to tell whether the Thomases are accusing either defendant, both of them, or someone else entirely.

Subject to the foregoing limitations, the Thomases may file a second amended complaint within 28 days of the date this memorandum opinion and order is filed. Once the second amended complaint is filed, defendants may move anew to dismiss if they have grounds to do so.

* * *

For the reasons stated, the court grants defendants' motion to dismiss and grants the Thomases leave to replead.

**SO ORDERED**.

January 10, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE