IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSAN LYNN WILSON (THOMAS), §
et al., §
 §
              Plaintiffs, §
 § Civil Action No. 3:18-CV-0854-D
VS. §
 §
DEUTSCHE BANK TRUST §
COMPANY AMERICAS, AS §
TRUSTEE FOR RESIDENTIAL §
ACCREDIT LOANS, INC., §
MORTGAGE ASSET-BACKED §
PASSTHROUGH CERTIFICATES, §
SERIES 2006-QS5, et al., §
 §
              Defendants. §

MEMORANDUM OPINION
AND ORDER

In *Wilson v. Deutsche Bank Trust Co. Americas*, 2019 WL 175078 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.) ("*Wilson I*"), the court granted the Fed. R. Civ. P. 12(b)(6) motion to dismiss of defendants Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-backed Passthrough Certificates, Series 2006-QS5 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen"), dismissed all claims of *pro se* plaintiffs Susan Lynn Wilson (Thomas) and Tommy Thomas, and granted the Thomases leave to replead some, but not all, of their claims. *Id.* at *8. The Thomases have amended their complaint, and Deutsche Bank and Ocwen move anew to dismiss under Rule 12(b)(6). For the reasons set out below, the court grants the motion and also grants plaintiffs one last opportunity to amend in order to state a claim on which relief can be granted.

I

This case is the latest in a series of lawsuits related to the attempted foreclosure of plaintiffs' residential property, located on Berkshire Lane in Dallas.[1] Because the relevant background facts are set out in *Wilson I*, *see id.* at *1, the court will limit its discussion to what is necessary to understand today's decision.

In 2006 the Thomases obtained a home equity loan from Wachovia Bank, secured by their residence on Berkshire Lane. In 2009 Homecomings Financial ("Homecomings"), the Thomases' loan servicer, sent them a letter offering a loan modification that would allegedly become permanent after the Thomases made three on-time payments. According to the second amended complaint, the "application for loss mitigation in 2009, which was initiated by the Thomases, as the result of a letter sent on May 28, 2009, by [Homecomings], resulted in an acceptance for a loan modification with a reduced monthly payment which the Thomases paid via a coupon statement they received from [GMAC Mortgage, LLC ("GMAC")] in June, 2009." 2d Am. Compl. 9. The Thomases maintain that they made three payments that were on time and in the agreed-upon reduced amount, but that GMAC, the Thomases' new servicer, returned the third payment, canceled the agreement, and, along with

---

[1]In deciding this Rule 12(b)(6) motion, the court construes the second amended complaint in the light most favorable to the Thomases, accepts all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Deutsche Bank, instituted foreclosure proceedings. In 2013 Deutsche Bank voluntarily non-suited the foreclosure action. A new foreclosure action was initiated in 2015.

On March 28, 2017 the Thomases submitted a loss mitigation application ("Application") to Ocwen. They contend that Ocwen told them in 2016 that it had no record of any Homecomings or GMAC loan modification application, no record of any loan modification, and no record of a payment coupon sent by GMAC. On March 29, 2017, while the Thomases' Application was pending for review, Ocwen and Deutsche Bank, by its substitute trustee, moved for expedited foreclosure. On April 26, 2017 the Thomases received notification that their Application was fully "receipted." When the Thomases contacted Ocwen to determine why the foreclosure was proceeding despite their Application, Ocwen's representative informed them that the substitute trustee's law firm had been notified that the Application was complete and that evidence of the notification was in the computer. The Thomases contend that, as a result of defendants' filing for expedited foreclosure, they lost the opportunity to sell their home at a fair market value of $995,000.

On March 9, 2018 the Thomases sued Deutsche Bank and Ocwen in state court, and the case was removed to this court. In their second amended complaint,[2] the Thomases allege that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.41, by "dual tracking" the Application. They also assert that

---

[2]In *Wilson I* the court dismissed plaintiffs' first amended complaint, but granted them leave to replead the claims that were not dismissed with prejudice. *Wilson I*, 2019 WL 175078, at *8.

defendants violated the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. §§ 1639h, 1640h, and 1640(a), by violating the requirements for an appraisal of the Thomases' property to establish value for a sales price; that Deutsche Bank [and Trust Americas as a successor or assignee of Wachovia] violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1639c, by "granting a sub prime mortgage to Borrowers who clearly did not have sufficient income after the house payment to meet other obligations or catastrophic or unplanned events," 2d Am. Compl. 13; that Ocwen violated 12 C.F.R. 1024.37 and 15 U.S.C. § 1463 by placing forced-placed insurance without a reasonable basis and failing to send notice of impending coverage; and that Deutsche Bank and Ocwen lack the authority to foreclose.

Defendants move to dismiss the second amended complaint under Rule 12(b)(6). The Thomases oppose the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, the Thomases must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court begins with defendants' motion to dismiss the Thomases' claim that Ocwen violated 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.41(c)(1)(ii), (d), and (g) by "dual tracking" the Thomases' first and only "receipted and completed" loss mitigation application with Ocwen.

A

"Dual tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2016) (per curiam).

Under 12 C.F.R. § 1024.41(g), which is privately enforceable via § 6(f) of RESPA, dual tracking is prohibited when the borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale, unless certain specified conditions—not applicable here—are satisfied. *Gresham*, 642 Fed. Appx. at 359; *see also* 12 C.F.R. § 1024.41(a), (g).[3] Prior to the 2016 amendments,[4] which became effective October 19, 2017, a servicer was

---

[3]12 C.F.R. § 1024.41(g) provides:

> [i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale," unless:
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
> (3) The borrower fails to perform under an agreement on a loss mitigation option

[4]Section 1024.41(i) was amended effective October 2017. *See* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72,373, 72,375 (Oct. 19, 2016) (codified at 12 C.F.R. § 1024.41). The current version of § 1024.41(i) provides:

> Duplicative requests. A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has

"only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i) (2016). In other words, the restrictions in § 1024.41(g) "apply only to a borrower's first loss mitigation application." *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 Fed. Appx. 314, 318 n.4 (5th Cir. 2015) (per curiam). Accordingly, plaintiffs bringing a claim for violation of 12 C.F.R. § 1024.41(g) must allege facts that demonstrate that the loan modification application at issue is their first complete loss mitigation application. *See, e.g., Ruiz v. PennyMac Loan Servs., LLC*, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.) (dismissing § 1024.41 claim where plaintiff did "not allege any facts that enable the court to draw the reasonable inference that the loan modification application he submitted to PennyMac was his first complete loss mitigation application."); *see also Solis v. U.S. Bank, N.A.*, 726 Fed. Appx. 221, 223 (5th Cir. 2018) (per curiam) ("The district court did not err when it held that the [plaintiffs] failed to allege that this application was their first complete loss mitigation application. . . . Thus, [plaintiffs] again failed to plead the prerequisites of a plausible claim.");[5] *see also Rachal v. Select Portfolio Servicing, Inc.*, 2018 WL 3193835, at *5 (E.D. Tex. June 5, 2018), *rec. adopted*, 2018 WL 3156145, at *1 (E.D.

---

been delinquent at all times since submitting the prior complete application.

[5]Although the loss mitigation application at issue in *Solis* was submitted in 2014, *see Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *1 (S.D. Tex. June 23, 2017), the Fifth Circuit nonetheless applied § 1024.41(i) as currently amended in concluding that the district court properly dismissed the case, *see Solis*, 726 Fed. Appx. at 223.

Tex. June 28, 2018); *Higginbotham v. IndyMac Bank, F.S.B.*, 2017 WL 2701939, at *4 (E.D. Tex. June 1, 2017), *rec. adopted*, 2017 WL 2691241, at *1 (E.D. Tex. June 22, 2017).

To state a claim under § 6(f), a plaintiff must also show that he or she suffered actual damages as a result of the defendant's violation. *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx. 790, 795 (5th Cir. 2014) (per curiam). A prevailing plaintiff is entitled to recover actual damages and reasonable attorney's fees and costs. *See* 12 U.S.C. § 2605(f)(1)(A), (f)(3). A plaintiff who proves a "pattern or practice of noncompliance" with RESPA may recover statutory damages of up to $2,000. *Id.* § 2605(f)(1)(B). The plaintiff must allege such a pattern or practice of misconduct for his or her statutory damages claim to survive a motion to dismiss. *See Allen v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3421067, at *4 (N.D. Tex. Aug. 9, 2017) (Fitzwater, J.).

B

Defendants move to dismiss the Thomases' § 1024.41 claim, contending, *inter alia*, that they do not allege that the loss mitigation application they submitted in 2017 was their first loss mitigation application; that the Thomases admit that they submitted a complete application in 2009, Homecomings approved the loan modification, and they were required to make payments to GMAC in June 2009; that, in October 2012, Ocwen purchased GMAC ResCap, Inc.'s mortgage servicing and origination assets at a bankruptcy auction, thereby stepping into the shoes of the original servicer; and the Thomases do not plead any entitlement to damages under RESPA.

In response, the Thomases contend that their March 28, 2017 Application is the "first

and only application submitted to Ocwen," Ps. Br. 6, that no other application for loss mitigation exists, and that Ocwen informed them in late 2016 that no previous loss mitigation application or loan modification existed with it or any previous server. The Thomases also posit that

> [i]n 2009, the Thomases responded to a letter from Homecomings offering a loan modification if they sent in the three trial payments. The Thomases called Homecomings. In that phone call, the Thomases answered a few questions to obtain what they thought was a loan modification based on the letter. The representative said to receive the new reduced payment for the offering in the letter the Thomases would need to pay the . . . first payment in cash immediately. The Thomases complied. . . . Documents would be sent out later upon receipt and deposit of the cash payment said the Homecomings representative[.] No documents arrived. Upon information and belief, the Thomases *believed* they had a modification as long as they sent in the payments as required. Then their new servicer, GMAC, cancelled the agreement and sent back the third payment. . . . In late, 2016, Ocwen informed the Thomases that there was no record of any application for loss mitigation from them or any previous servicer, including Homecomings. There was also no record of any loan modification from a previous servicer, Homecomings or GMAC. No transcripts or computer entries, from a phone call the Thomases made to Homecomings, exist. A phone call, in which the Thomases answered questions from a Homecomings representative for what they believed was for a loan modification was not. No loan modification offer was made, according to Ocwen. "The Thomases loan was reviewed for a loan modification in 2009, but none was offered.["] The March, 2017, application would be the Thomases' first.

Ps. Br. 8-9. Regarding damages, the Thomases maintain that, in 2016, they had two possible buyers for the first time in over nine years, that the buyers required the Thomases to get a written sales price, and that "[b]y dual tracking the Thomases and filing for expedited

- 9 -

foreclosure the Thomases lost a real opportunity to sell their home at fair market value for a combined total of $995,000 for both parcels of land." *Id*. at 12. The Thomases contend they were blocked from selling due to the foreclosure action and lost the $60,000 in real estate commissions that they would have made on the sale of their residence.

C

The court holds that the Thomases have failed to state a RESPA-based claim for a violation of 12 C.F.R. § 1024.41, and that the claim must be dismissed.

First, although the Thomases characterize their March 28, 2017 Application as their "first and only 'receipted and completed' loss mitigation application with Ocwen,"[6] 2d Am. Compl. 5, they specifically plead in their second amended complaint that

> [a]n earlier application for loss mitigation in 2009, which was initiated by the Thomases, as the result of a letter sent on May 28, 2009, by Homecomings Financial, resulted in an acceptance for a loan modification with a reduced monthly payment which the Thomases paid via a coupon statement they received from GMAC in June, 2009.

*Id*. at 9. In response to defendants' motion to dismiss, the Thomases now contend that they never submitted a completed loan modification application to Homecomings in 2009.[7] When

---

[6]Defendants contend, and the Thomases do not dispute, that in October 2012 Ocwen purchased GMAC's mortgage servicing and origination assets, thereby stepping into the shoes of the original servicer.

[7]The Thomases assert that, during a telephone call with Homecomings, they answered questions "for what they believed was for a loan modification," but that no written application was submitted, no loan modification offer was made, and although their "loan was reviewed for a loan modification in 2009, . . . none was offered." Ps. Br. 9.

ruling on a motion to dismiss, however, the court does not consider additional facts that are alleged in a response brief but not in the complaint. *See Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013); *Roubinek v. Select Portfolio Servicing Inc.*, 2012 WL 2358560, at *3 n.2 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (citing *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) ("[W]hen deciding, under Rule 12(b)(6), whether to dismiss for failure to state a claim, the court considers, of course, only the allegations in the complaint.")); *Coach, Inc. v. Angela's Boutique*, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) ("Allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." (citation omitted))). This is especially the case when, as here, the allegations in the response brief directly contradict the allegations in the second amended complaint. Because the Thomases specifically allege that they applied for loss mitigation in 2009 *and were accepted* for a loan modification, and because they do not dispute that Ocwen stepped into the shoes of their prior loan servicers, they have failed to plead a claim under 12 C.F.R. § 1024.41(g).

Second, the Thomases have failed to plausibly allege actual damages as a result of Ocwen's "dual tracking" their loss mitigation application. They argue in their response brief that they were unable to sell their property and receive a commission on the sale because Ocwen "dual track[ed] the Thomases and file[d] for expedited foreclosure." Ps. Br. 12. But they fail to adequately explain how Ocwen's failure to comply with the procedural requirements of 12 C.F.R. § 1024.41 "blocked [them] from selling their home," *id.* In fact,

the Thomases specifically allege in the second amended complaint that they were unable to sell their property as a result of Ocwen's failure to provide them with a verified sales price and because the potential buyer did not want to "get involved with the looming legal scenario of foreclosure which could take many months to resolve," 2d Am. Compl. 10. These allegations undercut any argument the Thomases advance in their response brief linking the inability to sell their property with Ocwen's alleged failure to comply with 12 C.F.R. § 1024.41.

Third, the Thomases have not alleged a pattern or practice of misconduct, as required for statutory damages, *see* 12 U.S.C. § 2605(f)(1), and have not identified a legal basis for equitable relief, *cf. id.* (providing for damages only). "Because § 2605(f)(1)(B) does not specify what constitutes a 'pattern or practice of noncompliance' with RESPA, courts have interpreted the phrase in accordance with the usual meaning of the words to mean '"a standard or routine way of operating."'" *Obazee v. Bank of N.Y. Mellon*, 2015 WL 8479677, at *3 (N.D. Tex. Dec. 10, 2015) (Fitzwater, J.) (quoting *McLean v. GMAC Mortg. Corp.*, 595 F.Supp.2d 1360, 1365-66 (S.D. Fla. 2009)). "Courts have also required that plaintiffs seeking statutory damages present evidence of a 'standard or institutionalized practice of noncompliance' by the defendant." *Obazee*, 2015 WL 8479677, at *3 (quoting *McLean*, 595 F.Supp.2d at 1365). In their response brief, the Thomases list conduct with respect to their Application and the alleged loan mitigation agreement with Homecomings that they contend demonstrates that Ocwen engaged in a pattern and practice of non-compliance with RESPA. *See* Ps. Br. 14-15. Assuming *arguendo* that the Thomases have plausibly alleged conduct

with respect to *their particular* mortgage that violates RESPA, they have failed to plead a standard or institutionalized practice of noncompliance. The court therefore grants defendants' motion to dismiss this claim.

IV

The court next addresses whether the Thomases have stated a claim under 15 U.S.C. § 1639h, which imposes certain appraisal requirements on creditors.[8] Under 15 U.S.C. § 1639h, "[a] creditor may not extend credit in the form of a higher-risk mortgage to any consumer without first obtaining a written appraisal of the property to be mortgaged prepared in accordance with the requirements of this section," and then lists the various appraisal requirements.

The Thomases allege the following in support of their § 1639h claim:

> [i]n late 2016, the Thomases requested a sales price from Ocwen so that they could list and sell the home. Ocwen said they would need to order an appraisal to determine current value so they could respond. The Thomases agreed, and received a letter dated October 7, 2016, *Important Information About Your Property* and an appraisal dated October 3, 2016. The appraisal received by the Thomases was in violation of the appraisal requirements of Dodd-Frank, 1471, 15 U.S.C., 1639h and enforceable by 15 U.S.C., 1639h(e) and 1640h(e) and 1640(a).

2d. Am. Compl. 11 (bold font omitted). Defendants move to dismiss the Thomases' § 1639h-based claim on the ground, *inter alia*, that they fail to allege that in 2016 they sought an extension of credit. The court agrees. By its terms, § 1639h applies only to the extension

---

[8]The requirements of 15 U.S.C. § 1639h are enforceable via 15 U.S.C. § 1539h(e) and § 1640(a). *See Wilson I*, 2019 WL 175078, at *6.

of credit. *See* 15 U.S.C. § 1639h(a). In their second amended complaint, the Thomases allege only that they requested a sales price from Ocwen so that they could list and sell the home. Nowhere do they plead that they sought or obtained an extension of credit from Ocwen. They argue in their response brief, without citing to any authority, that "an extension of credit can be in the form of a loan modification or a short sale." Ps. Br. 15. Even assuming *arguendo* that the Thomases are correct, they do not allege that the October 2016 appraisal was for purposes of a loan modification. Rather, as explained, they specifically plead that Ocwen ordered the appraisal to determine the current value of the Thomases' residence in response to a request for a sales price from them "so that they could list and sell the home." 2d. Am. Compl. 11. Because the Thomases do not allege any facts that would permit the reasonable conclusion that the October 2016 appraisal was for the purpose of "extend[ing] credit in the form of a higher-risk mortgage," or that Ocwen did, in fact, extend credit in the form of a higher-risk mortgage, the court concludes that the Thomases have failed to state a claim for relief under 15 U.S.C. § 1639h. Accordingly, the court dismisses this claim.

V

Finally, defendants move to dismiss the Thomases' challenge to their authority to foreclose.

In the second amended complaint, the Thomases allege that Deutsche Bank's attempt to foreclose "is fatally defective for failure to allege that the trust for whom they purport to act has the authority to first foreclose and secondly has granted them the authority to actually

institute foreclosure proceedings." 2d Am. Compl. 17. They "ask the Court to consider [their] request for a securitized chain of title . . . before [they] are deprived of their property." *Id.* at 18. Defendants move to dismiss the Thomases' "lack of authority to act" claim, contending that the Assignment of Deed of Trust to Deutsche Bank was recorded in 2013, well before the foreclosure sale at issue or this lawsuit, and that Deutsche Bank is a mortgagee authorized to foreclose because, by virtue of the recorded Assignment of Deed of Trust, Deutsche Bank is both a grantee and the last person to whom the instrument has been assigned of record. The Thomases did not respond to this argument.

The Thomases have failed to plead sufficient facts to permit the reasonable inference that Deutsche Bank lacked authority to foreclose and that they are therefore entitled to the relief they seek. In *Wilson I* the court explained:

> [t]he Thomases also allege that "[n]o proof has been filed of the trust's right to transfer [p]roperty," and that defendants have not "proved chain of title." 1st Am. Compl. ¶¶ 5, 7. These allegations fail for two reasons. First, they are too conclusory to credit in the context of a Rule 12(b)(6) motion to dismiss—they are unsupported by facts showing *how* defendants have failed to prove chain of title. *See Iqbal*, 556 U.S. at 678. Second, these allegations impermissibly attempt to shift the burden of proof to defendants. It is the Thomases who seek relief, in the form of $1.25 million in damages, the removal of all liens from their property, and an injunction against future foreclosure actions. They must prove that defendants are liable; defendants need not prove that they are *not* liable. The Thomases have thus failed to plausibly allege that defendants lack authority to foreclose because of some defect in the chain of title.

*Wilson I*, 2019 WL 175078, at *3 (footnotes omitted). The second amended complaint

suffers from these same defects. Accordingly, to the extent the Thomases have attempted to bring a claim based on defendants' lack of authority to foreclose on their property, the court dismisses this claim.

VI

Although the court is granting defendants' motion, and although the court has already afforded the Thomases one opportunity to amend, it will grant them one last opportunity to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). The Thomases shifted the focus of their lawsuit after the court granted defendants' first motion to dismiss, and the court has now explained why their remaining causes of action fail to state a claim on which relief can be granted. The Thomases have not stated that they cannot, or are unwilling to, cure the defects that the court has identified. The court will therefore grant them 28 days from the date this memorandum opinion and order is filed to file a third amended complaint. If they replead, defendants may move anew to dismiss, if they have a basis to do so.

\* \* \*

For the reasons set out, the court grants defendants' motion to dismiss and grants the Thomases one final opportunity to replead.

**SO ORDERED**.

June 24, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE