IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN LYNN WILSON (THOMAS), et al., | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:18-CV-0854-D |
| VS. | § § | |
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS5, et al., | § § § § § § § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is a removed action arising from attempts to foreclosure on the residence of *pro se* plaintiffs Susan Lynn Wilson ("Susan") and Tommy Thomas.[1]  Defendants Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS5 ("Deutsche Bank"), and loan servicer PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH"), as the alleged

---

[1]This action is the subject of two prior opinions.  In *Wilson v. Deutsche Bank Trust Co. Americas* (*Wilson I*), 2019 WL 175078 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.), the court granted the Rule 12(b)(6) motion to dismiss of Deutsche Bank and Ocwen, and granted the Thomases leave to replead some, but not all, of their claims. *Id.* at *8.  In *Wilson v. Deutsche Bank Trust Co. Americas* (*Wilson II*), 2019 WL 2578625, at *1 (N.D. Tex. June 24, 2019) (Fitzwater, J.), the court granted defendants' Rule 12(b)(6) motion to dismiss the Thomases' second amended complaint and permitted the Thomases to replead.

surviving entity of a merger between PHH and the Thomases' former servicer, Ocwen Loan Servicing, LLC ("Ocwen"), move under Fed. R. Civ. P. 12(b)(6) to dismiss the Thomases' third amended complaint for failure to state a claim. The Thomases object to PHH's participation in this lawsuit and oppose the motion. They also move to supplement their third amended complaint. For the reasons that follow, the court overrules the Thomases' objection; grants in part and denies in part the motion of Deutsche Bank and PHH to dismiss; raises *sua sponte* grounds for dismissing some of plaintiffs' claims; and denies plaintiffs' motion to supplement. The court grants the Thomases leave to replead the claims that the court is dismissing on grounds that it has raised *sua sponte*.[2]

I

In 2006 the Thomases obtained a home equity loan from Wachovia Bank ("Wachovia") secured by the Thomases' residence on Berkshire Lane in Dallas.[3] They became delinquent on the loan in 2008. The following year, the Thomases' loan servicer, Homecomings Financial, invited them to apply for a loan modification. The Thomases applied, and a new loan servicer—GMAC ResCap, Inc. ("GMAC")—approved their application. Under the terms of the modification agreement, if the Thomases successfully made three on-time payments in an agreed-upon reduced amount, the reduced payment

_____

[2]In *Wilson II* the court stated that "it [would] grant [the Thomases] one last opportunity to replead." *Wilson II*, 2019 WL 2578625, at *6. But because the court is raising grounds for dismissal *sua sponte*, it will give this additional opportunity to replead.

[3]As the court explains *infra* at § III, in deciding this motion to dismiss, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to plaintiffs.

amount would become permanent. The Thomases allege that, although they upheld their end of the bargain, GMAC did not: GMAC returned the third on-time payment, and Deutsche Bank (the assignee of the lien against the Thomases' residence) attempted to foreclose. Deutsche Bank nonsuited the initial foreclosure action in 2013, but then initiated a new foreclosure action in 2015.

Ocwen began servicing the Thomases' loan at some point after it acquired GMAC in October 2012. In 2016 Ocwen offered the Thomases a loan modification, but when the Thomases contacted Ocwen about the option, the servicer reported that the modification was no longer available. Instead, the Thomases were permitted to apply for loss mitigation. On March 28, 2017 the Thomases submitted a loss mitigation application ("Application") to Ocwen. The following day, on March 29, 2017, while the Application was pending for review, Ocwen and Deutsche Bank, by its substitute trustee, moved for expedited foreclosure. On April 26, 2017 the Application was fully "receipted."

When the Thomases contacted Ocwen to determine why the foreclosure was proceeding, Ocwen's representative informed them that the substitute trustee's law firm had been notified that the Application was complete and that evidence of the notification was in the computer. Despite this evidence, the law firm pursued the foreclosure action, and the Thomases were required to appear at the expedited foreclosure hearing on June 21, 2017 and at subsequent rescheduled hearings. The expedited foreclosure was dismissed in 2018.

On March 9, 2018 the Thomases filed suit against Deutsche Bank and Ocwen in state court, and the case was removed to this court. In April 2019 the Thomases received a letter

from their new servicer, PHH, advising that they might have loss mitigation options with PHH. PHH joined this lawsuit by filing the instant joint motion to dismiss.

In their third amended complaint, the Thomases allege that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), and subsections of its implementing regulations, 12 C.F.R. § 1024.41, by "dual tracking" the Application. They also assert that Ocwen violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1639h, by failing to perform an adequate appraisal in conjunction with their request for loss mitigation, and they challenge Deutsche Bank's authority to foreclose based on alleged inaccuracies in the assignment process. In addition to these claims, the Thomases assert a claim under § 1413 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 15 U.S.C. § 1640(k), as well as additional RESPA claims, including that defendants violated 12 C.F.R. § 1024.37 by placing forced-placed insurance when the Thomases already had coverage; violated § 1024.38 by allegedly failing to maintain reasonable practices and procedures in communicating with borrowers; violated § 1026.36 by misapplying loan payments; and violated 12 U.S.C. § 2605(c) by failing to respond to the Thomases' May 17, 2017 email regarding the expedited foreclosure. The Thomases seek actual, statutory, and exemplary damages as well as injunctive and equitable relief.

Deutsche Bank and PHH move to dismiss the third amended complaint under Rule 12(b)(6). The Thomases object to PHH's participation in this lawsuit and oppose the motion. They also move to supplement their third amended complaint.

II

The court turns first to the Thomases' objection to PHH's participation in this suit.

A

Without filing a motion to substitute under Rule 25(c), PHH, together with Deutsche Bank, filed the instant joint motion to dismiss as the alleged successor by merger to Ocwen, the Thomases' former loan servicer. Although the Thomases acknowledge that the loan at issue was transferred to PHH in 2019, they object to defendants' addition of PHH without first seeking leave to join PHH or otherwise giving the Thomases and the court notice of this addition. The Thomases maintain that Ocwen completed the acquisition of PHH in October 2018 but failed to add PHH, a new party, until now. They contend that because their claims are against Ocwen, not PHH, defendants' late addition of PHH to this case is an attempt to thwart the resolution of their loan account issues with PHH as their current servicer. The Thomases also posit that this substitution violates the joinder deadline set by the court's June 8, 2018 scheduling order.

Defendants respond that they have not sought to join a new party to this lawsuit, but instead have substituted the surviving entity of the merger between Ocwen and PHH. They maintain that the merger between PHH and a wholly-owned subsidiary of Ocwen occurred on October 4, 2018, and that Ocwen merged into PHH on June 1, 2019. In support of this contention, defendants attach an announcement from Moody's Investors Service ("Moody's") that indicates that Moody's assigned Ocwen's master servicer assessment to PHH because, "[o]n June 1, 2019, Ocwen Loan Servicing LLC merged into PHH Mortgage

Corporation," and that "PHH Mortgage Corporation is the surviving entity." Ds. Resp. to Ps. Obj. Ex. A. at 1.[4] Defendants allege that referring to PHH as the proper surviving entity does not jeopardize the Thomases' claims in this case or their efforts to resolve the loan account issues with PHH.

The Thomases reply that their interests have been prejudiced by PHH's addition as a party because they can no longer submit a new loss mitigation application to PHH as their alleged transferee servicer unless they do so through PHH's counsel. They contend that the merger between Ocwen and PHH occurred in October 2018 and that defendants' statement that Ocwen merged into PHH in June 2019 is misleading. According to the Thomases, June 2019 is merely the date that the companies completed transferring the remainder of the loans into a new servicing platform. The Thomases maintain that defendants' statement that PHH "stepp[ed] into the shoes of Ocwen" does not demonstrate that PHH is the same entity, and they posit that defendants have used the same phrase to describe the transfer of the Thomases' loan among four different servicers.

The Thomases also contend that, by adding PHH to this lawsuit and thereby requiring the Thomases to communicate with PHH via counsel about their property, defendants'

---

[4]Defendants request that the court take judicial notice of the merger announcement by Moody's under Fed. R. Evid. 201. Because defendants cite no authority to support judicial notice of a third party announcement of a merger and do not explain the reason for their request, the court declines at this time to take judicial notice of the Moody's announcement. *See Brendel v. Meyrowitz,* 2017 WL 1178244, at *2 (N.D. Tex. Mar. 30, 2017) (Fitzwater, J.) (declining to take judicial notice when requesting party failed to cite authority and the purpose for its judicial notice request).

counsel is infringing their constitutional rights, depriving them of their property without due process. The Thomases assert that defendants violated Rule 7.1(b)(2) regarding supplemental filings by failing to promptly file a supplemental statement when they had notice of the merger and change in parties. Finally, the Thomases contend that the addition of PHH to the this lawsuit is a continuation of defendants' practice of withholding information. They request that the court deny PHH's addition to this lawsuit, permit them to communicate with PHH directly, and sanction defendants for alleged violations of the Federal Rules of Civil Procedure.

B

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted . . . or joined with the original party." "A 'transfer of interest,' as described in Rule 25(c), includes circumstances where a corporation is the successor to the original corporate party by merger." *IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co.*, 2016 WL 6877772, at *1 (E.D. Tex. July 5, 2016) (quoting *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993)).

Contrary to the Thomases' contentions, Rule 25(c) does not require a successor by merger to file a substitution motion or any other motion before asserting its interests in the action. *See FDIC v. SLE, Inc.*,722 F.3d 264, 270 (5th Cir. 2013) (per curiam) (holding that because of "Rule 25's wholly permissive terms," a plaintiff-transferee is "not required under Rule 25(c) and (a)(3) to substitute as a transferee" before filing revival motion); *see also*

*Fairport Ventures, LLC v. Beneficial Fin. I, Inc.*, 2017 WL 7806388, at *1 (S.D. Tex. July 6, 2017) (concluding that a transferee "properly stands in the shoes of [the initial defendant] as [its] successor in interest" and is not required to file a separate substitution motion before moving for summary judgment). Because both parties maintain that a merger occurred between PHH and Ocwen in October 2018 and that PHH began servicing the loan in April 2019, the court concludes that PHH is a transferee as contemplated by Rule 25(c), and its substitution in this lawsuit is proper.[5] For these reasons, the court overrules the Thomases' objection to PHH's proceeding as a defendant.

The court also overrules the Thomases' objection because their objection implicates the merits of the legal issues in this case. The gravamen of the Thomases' complaint is that a change in servicers—whether by merger or acquisition—constitutes a "transfer" for purposes of their RESPA claims under 12 C.F.R. § 1024.41, thereby requiring the transferee servicer to consider a loss mitigation application anew, regardless of whether a predecessor servicer had already done so. Thus in requesting that the court exclude PHH from this suit so that the Thomases may submit a new loss mitigation application to PHH as an alleged transferee servicer, the Thomases are essentially seeking a ruling on a key issue in the case: whether the Thomases are entitled to consideration of another loss mitigation application by

---

[5]The court notes that the term "transferee" may have different meanings within the context of Rule 25(c) and 12 C.F.R. § 1024.41(I), which deals with servicing transfers. Thus although the court concludes that PHH is a transferee for the purposes of Rule 25(c), the court expresses no view on the question whether PHH is a "transferee" for purposes of RESPA's requirements for transferee servicers.

a servicer who obtained the loan by merger. Such a request reaches beyond the procedural matter of ensuring the party participating in the case is a true party-in-interest and extends to the substance of the Thomases' action and legal theory against Ocwen. For this reason, the court concludes that such a matter is better decided in the context of a substantive motion, such as a summary judgment motion.

III

The court now considers defendants' motion to dismiss.

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, the Thomases must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"

- 9 -

*Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

IV

Defendants move to dismiss the Thomases' claim that Ocwen violated RESPA, 12 U.S.C. § 2605(f), and subsections of its implementing regulations, 12 C.F.R. § 1024.41(c)(1)(i), (c)(3), (f), and (g), by "dual tracking" the Thomases' first and only "receipted and completed" loss mitigation application with Ocwen.

A

Section 1024.41 regulates loss mitigation procedures provided by loan servicers, and is privately enforceable via § 6(f) of RESPA.  *See* 12 C.F.R. § 1024.41.  Section 1024.41 does not require that a servicer "provide any borrower with any specific loss mitigation option."  *Id.* § 1024.41(a).  Instead, it specifies required procedures, including deadlines for reviewing timely loss mitigation applications and requirements for notifying borrowers in writing, within 30 days of receipt of a complete loss mitigation application, which loss mitigation options, if any, the loan servicer will offer the borrower, or the specific reasons for denying a complete loss mitigation application.  *Id.* § 1024.41(c)(1)(ii), (d).

To state a claim under § 6(f) and § 1024.41, plaintiffs must allege facts that

demonstrate that the loan modification application at issue is their first complete loss mitigation application and that they suffered actual damages as a result of defendants' failure to comply with the loss mitigation procedures established in § 1024.41. *See Solis v. U.S. Bank, N.A.*, 726 Fed. Appx. 221, 223 (5th Cir. 2018) (per curiam) ("The district court did not err when it held that the [plaintiffs] failed to allege that this application was their first complete loss mitigation application. . . . Thus, [plaintiffs] again failed to plead the prerequisites of a plausible claim."); *see also Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx. 790, 795 (5th Cir. 2014) (per curiam) ("In order to recover for a violation, a borrower must show 'actual damages to the borrower as a result of the [servicer's] failure' to comply with RESPA."). A prevailing plaintiff is entitled to recover actual damages and reasonable attorney's fees and costs. *See* 12 U.S.C. § 2605(f)(1)(A), (f)(3).[6]

B

Defendants move to dismiss the Thomases' claim under 12 C.F.R. § 1024.41, contending that a loan servicer is only required to comply once with the regulation's procedures under § 1024.41(i). Because Ocwen's predecessor—GMAC—granted a loan modification in 2009 before Ocwen acquired GMAC and the loan, Ocwen maintains that it had no duty to comply with the loss mitigation procedures. Defendants also contend that the

---

[6]A plaintiff who proves a "pattern or practice of noncompliance" with RESPA may also recover statutory damages of up to $2,000. 12 U.S.C. § 2605(f)(1)(B). Although the Thomases allege that Ocwen engaged in a "pattern or practice of noncompliance" with RESPA, defendants do not challenge the Thomases' third amended complaint on this ground. Therefore, the court will not address the sufficiency of these allegations.

Thomases' § 1024.41 claims fail because they have not adequately pleaded actual damages.

C

Defendants contend that the Thomases' concession of a previous loan modification with a predecessor servicer warrants dismissal of their 12 C.F.R. § 1024.41 claims.

1

In their third amended complaint, the Thomases allege that they submitted their first and only receipted and completed Application with Ocwen on March 28, 2017, after the loan was transferred to Ocwen from GMAC. The following day, March 29, 2017, Deutsche Bank filed for expedited foreclosure, which the Thomases maintain violated § 1024.41. *See, e.g.,* § 1024.41(g) ("If a borrower submits a complete loss mitigation application . . . a servicer shall not move for foreclosure judgment[.]"). Relying on the Consumer Financial Protection Bureau ("CFPB") official interpretation of 12 C.F.R. § 1024.41, the Thomases allege that, for the purposes of compliance with § 1024.41, "[a] transferee servicer and a transferor servicer, however, are not the same servicer." 3d Am. Compl. 13. (quoting CFPB's Official Staff Commentary on Regulation X, F.R.R.S. 6-1444.94, 2014 WL 2195779, at *13 (June 2018)). They maintain that Ocwen, as "a transferee servicer[,]" was "required to comply with the applicable requirements of § 1024.41 upon receipt of a loss mitigation application from a borrower whose servicing the transferee servicer has obtained through a servicing transfer, even if the borrower previously received an evaluation of a complete loss mitigation application from the transferor servicer." *Id.* In other words, according to the Thomases, because Ocwen is a transferee servicer, it was required to consider the Thomases'

Application and refrain from seeking foreclosure for the requisite period of time, despite the fact that the Thomases received a loan modification in 2009 from a different servicer.

Defendants contend that the Thomases' claims fail because one who alleges a claim under 12 C.F.R. § 1024.41 must plead that he submitted a single complete loss mitigation application, and the Thomases "concede that they obtained a loan modification in 2009." Ds. Mot. 8. Defendants maintain that a servicer need not entertain duplicative loss mitigation requests because a "servicer is only required to comply with the requirements of [12 C.F.R. § 1024.41] for a single complete loss mitigation application for a borrower's mortgage loan account." *Id.* at 9. (quoting 12 C.F.R. § 1024(i) (2016)).[7] Relying on *Germain v. U.S. Bank Nat'l Ass'n.*, 920 F.3d 269, 276 (5th Cir. 2019), defendants posit that, because Ocwen's predecessor—GMAC—complied with the loss mitigation procedures in granting the 2009 loan modification, GMAC's compliance "must be credited to the [current] servicer because it need only comply with such a requirement once." *Id.* at 276. Defendants posit that any

---

[7]As explained in *Wilson II*, § 1024.41(i) was amended effective October 2017. *See* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72,373, 72,375 (Oct. 19, 2016) (codified at 12 C.F.R. § 1024.41). The current version of § 1024.41(i) provides:

> Duplicative requests. A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.

- 13 -

loss mitigation application after the initial loan modification in 2009 with GMAC must be considered a duplicative request that Ocwen was not obligated to honor.

The Thomases reiterate that the Application submitted on March 27, 2017 was their first and only complete application for loss mitigation with the transferee servicer, Ocwen. They also contend that the predecessor servicer—GMAC—could not have complied with the regulations, because the loan modification occurred before the rule was adopted. Further, the Thomases maintain that if, as defendants contend, Ocwen stepped into the shoes of GMAC by way of acquisition, this transition constitutes a transfer, thereby obligating Ocwen to comply with the loss mitigation regulations anew. Due to the alleged transfer, the Thomases contend that their Application was not a duplicative request. Defendants do not reply to this argument.

2

The court concludes that the Thomases have adequately pleaded the first prong of a 12 C.F.R. § 1024.41 claim: they have alleged that they submitted their first complete loss mitigation application to their alleged transferee servicer, Ocwen. Although it is not yet settled whether Ocwen was required to comply with the loss mitigation requirements anew as a transferee servicer or whether it was entitled to rely on its predecessor's compliance with the rules, the court holds that, at the motion to dismiss stage, accepting as true the well-pleaded facts of the third amended complaint, the Thomases have plausibly pleaded that they submitted a single complete loss mitigation application to their alleged transferee servicer and that such an application would be entitled to review in compliance with § 1024.41's

procedures.[8]

Defendants' reliance on *Germain* does not alter the court's conclusion. *Germain* involved the early compliance of the *same* servicer before the rule was adopted, and did not address the question whether a merger constitutes a transfer for the purposes of compliance with 12 C.F.R. § 1024.41. *See Germain*, 920 F.3d at 269. Because the Thomases adequately allege that Ocwen is a *transferee* servicer, not the same servicer, their admission of a loan modification with GMAC in 2009 does not undercut the plausibility of their claim.

D

Defendants also move to dismiss the Thomases' 12 C.F.R. § 1024.41 claim on the basis that they have failed to adequately allege actual damages.

1

In their third amended complaint, the Thomases allege that they seek actual damages in the amount of $12,164.00 for travel expenses and lost hours away from development projects and their work to prepare for and attend scheduled and rescheduled hearings for the expedited foreclosure. The Thomases also aver that Susan was diagnosed with chronic cervical radiculopathy triggered by the extended hours spent at the computer to read, research, and write documents "to respond to defendants . . . in defense of plaintiffs' claims." 3d Am. Comp. 10. The Thomases also seek damages for emotional distress and pain and suffering that Susan has allegedly suffered from dealing with defendants' violations of

---

[8]If future developments in the law call this into question, the court will reevaluate this conclusion.

consumer mortgage servicing laws and the resulting radiculopathy. Although not pleaded in relation to their § 1024.41 claim, the Thomases allege in their third amended complaint, and later in their response to the motion to dismiss, that the dual tracking violation prevented them from selling their residence and avoiding further home ownership expenses. The Thomases also request equitable relief in the form of clear title to their property and an injunction preventing defendants from seeking foreclosure again.

Defendants move to dismiss the 12 C.F.R. § 1024.41 claim on the basis that the damages alleged in the Thomases' third amended complaint solely "relate[] to the alleged inability to sell the [p]roperty," and that these damages are not attributable to any alleged violations of the loss mitigation procedures in § 1024.41. Ds. Mot. 10. Defendants also maintain that only monetary damages are recoverable under RESPA, and that the Thomases cannot obtain equitable relief.

2

The court concludes that plaintiffs have pleaded sufficient facts for the court to draw the reasonable inference that the Thomases suffered actual damages resulting from Ocwen's alleged violation of 12 C.F.R. § 1024.41. Courts have interpreted "actual damages" under § 6(f) to include, *inter alia*:

> (1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience, such as time spent away from employment while preparing correspondence to the loan servicer, to the extent it resulted in actual pecuniary loss[,] (3) late fees and (4) denial of credit or denial of access to full amount of credit line.

*Ruiz v. PennyMac Loan Servs.*, *LLC*, 2018 WL 4772410, at *3 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.) (quoting *McLean v. GMAC Mortg. Co.,* 595 F.Supp.2d 1360, 1366 (S.D. Fla. 2009), *aff'd*, 398 Fed. Appx. 467 (11th Cir. 2010)). A well-pleaded claim under § 6(f) should therefore allege facts showing not only that the plaintiff suffered damages, but also that those damages were incurred "as a result of the failure" of the lender to comply with the statute or regulations. *See* 12 U.S.C. § 2605(f)(1)(A); *id.* at *2. Thus even minimal damages "suffice if the harm is traceable to the alleged RESPA violation." *Ruiz*, 2018 WL 4772410, at *3.

The court holds that, conclusory allegations notwithstanding, the Thomases have plausibly pleaded that they incurred actual damages as a result of Ocwen's alleged violations of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41. For example, they allege that they lost time and income as a result of preparing for and attending the expedited foreclosure hearings, which are adequate to satisfy the damages prong of a § 1024.41 claim. *See Ruiz*, 2018 WL 4772410, at *3. Additionally, although courts in this circuit are split on whether emotional damages are recoverable under RESPA, the court concludes that, until the law develops further, emotional damages, as alleged here, are adequate to plead a plausible claim at the motion to dismiss stage. *See Anderson v. Wells Fargo Bank, N.A.*, 2018 WL 3426269, at *11 (N.D. Tex. July 13, 2018) (Godbey, J.) (collecting cases and holding that emotional damages are recoverable under RESPA). Thus although the alleged relationship between the Thomases' ability to sell their residence and the asserted violations is tenuous, and "simply having to file suit [does not] suffice as a harm warranting actual damages," the court

concludes that the Thomases have pleaded other plausible actual damages. *Obazee v. Bank of N.Y. Mellon*, 2015 WL 4602971, at *4 (N.D. Tex. July 31, 2015) (Fitzwater, J.) (quoting *Lal v. Am. Home Servicing, Inc.*, 680 F.Supp.2d 1218, 1223 (E.D. Cal. 2010)). The court therefore denies defendants' motion to dismiss the Thomases' 12 C.F.R. § 1024.41 claim.

E

The court agrees with defendants that the Thomases have not identified a legal basis to recover equitable relief under RESPA. *See* 12 U.S.C. § 2605(f)(1) (providing for damages only). Several courts have concluded that equitable relief is not available under RESPA. *See, e.g., Billings v. Seterus, Inc.*, 170 F.Supp.3d 1011, 1014 (W.D. Mich. 2016) ("Plaintiff cannot seek equitable relief under RESPA, but Plaintiff has properly alleged actual damages[.]"); *Vilkofsky v. Specialized Loan Servicing*, 2017 WL 2573874, at *7 n.11 (W.D. Pa. June 14, 2017) (collecting cases and dismissing RESPA claims to the extent they sought equitable remedies). Because the Thomases have not plausibly alleged a legal basis for obtaining equitable relief under RESPA, the court dismisses with prejudice their RESPA-based claims for equitable relief.

F

Because the Thomases' allegations enable the court to reasonably infer that they submitted a single complete loss mitigation application to Ocwen as an alleged transferee and that they suffered actual damages as a result of Ocwen's alleged failure to comply with the loss mitigation procedures, the court concludes that the Thomases have pleaded a plausible RESPA claim under 12 C.F.R. § 1024.41. Accordingly, without suggesting a view on the

ultimate merits of this case, the court denies defendants' motion to dismiss the Thomases' § 1024.41 claim, but grants the motion with regard to the Thomases' requests for equitable relief under RESPA.

V

Defendants also move to dismiss the Thomases' TILA claims under 15 U.S.C. §§ 1639e and 1639h.

A

The Thomases allege that Ocwen violated 15 U.S.C. §§ 1639e and 1639h. Section 1639e imposes appraisal independence requirements on creditors in extending credit secured by a dwelling. *See* 15 U.S.C. § 1639e(a). Section 1639h(a) provides that "[a] creditor may not extend credit in the form of a higher-risk mortgage to any consumer without first obtaining a written appraisal of the property to be mortgaged," and prescribes a series of requirements with which the appraisal must comply. *Id.* § 1639h(a).

The Thomases contend that they were seeking an extension of credit by way of a loan modification from Ocwen. They maintain that the appraisal obtained in conjunction with the potential loan modification did not meet the variety of requirements imposed by TILA, which resulted in an overvaluation of their residence, and, in turn, impacted "the loan to value equation" for a loan and may have ultimately led to a denial of the modification.[9]

Defendants contend that the Thomases have failed to state a claim under TILA

---

[9] In their response, the Thomases also allege that defendants violated Federal Deposit Insurance Corporation Rule 323.3 for obtaining appraisals performed by a licensed appraiser.

because its provisions—specifically § 1639h—only apply to extensions of credit. Defendants maintain that because the Thomases fail to state how an appraisal or a loan modification is a form of consumer credit under TILA, the claim must be dismissed. Defendants also posit that, to the extent the Thomases' claims arose from the 2006 extension of credit, they are barred by TILA's one- or three-year statute of limitations.

## B

The court concludes that the Thomases have failed to state a claim under 15 U.S.C. §§ 1639e and 1639h because Ocwen did not extend any credit to the Thomases in the loan modification process, and, even if a loan modification could be considered an extension of credit, the claim is time-barred.

### 1

Sections 1639e and 1639h only apply to extensions of credit. *See* 15 U.S.C. §§ 1639e(a), 1639h(a). But even assuming that a loan modification could be considered credit, Ocwen never *extended* credit. Indeed, the basis of the Thomases' complaint is that Ocwen failed to appropriately evaluate their Application, and, as a result, withheld loss mitigation options, including loan modification, and sought foreclosure instead. Thus the Thomases have failed to plausibly plead that Ocwen extended credit to them, because it never granted the Thomases' request for a modification. Therefore, the court concludes that the Thomases have failed to plead a plausible claim under 15 U.S.C. § 1639h.

### 2

Moreover, even assuming *arguendo* that merely seeking without obtaining a loan

modification qualifies as an extension of credit under the 15 U.S.C. § 1639h, the claims are time-barred. Limitations is an affirmative defense. *See* Rule 8(c)(1). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings.'" *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986)). In other words, defendants are not entitled to dismissal under Rule 12(b)(6) unless the Thomases have "pleaded [themselves] out of court by admitting to all of the elements of the defense." *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)).

Section 1640(e) provides that, with the exception of violations of 15 U.S.C. §§ 1639, 1639b, or 1639c, any TILA claim must be brought within "one year from the date of the occurrence of the violation[.]" 15 U.S.C. § 1640(e). The Thomases allege violations of §§ 1639e and 1639h; therefore, the one-year statute of limitations applies. Thus whether the date of the occurrence is 2006, as defendants contend, or the date of the appraisal (October 3, 2016), as the Thomases' maintain, the Thomases' allegation that the violation occurred outside of the one-year statute of limitations bars their claim. The court therefore dismisses the Thomases' § 1639h claim.

VI

The court now considers the Thomases' challenge to defendants' authority to foreclose.

A

The Thomases contend that defendants do not have authority to foreclose on their property. They make the unsupported assertion that it is mandatory for the challenged party to present evidence of its right to foreclose. Defendants move to dismiss this contention, alleging that Deutsche Bank has authority to foreclose as mortgagee by virtue of the 2013 recorded Assignment of Deed of Trust under § 51.0025 of the Texas Property Code. To the extent the Thomases challenge the assignment of deed, defendants argue that borrowers do not have standing to contest the assignment.

The Thomases respond that the trust that held the property was liquidated in 2017 and was recently listed with another fund in a limited duration fund. Given the trust's relatively recent bankruptcy, the Thomases allege that Deutsche Bank, on behalf of the trust, may no longer own the trust and therefore the assignment of deed of trust may no longer be valid. For this reason, the Thomases demand proof of the validity of the assignment.[10] Defendants reply that they have already provided adequate evidence of Deutsche Bank's authority to foreclose by their production of the recorded Assignment of Deed of Trust.

_____

[10]The Thomases assert that "[i]n 2019, Rali 2006 QS5 was listed with Cavanal Hill Funds in a Limited Duration Fund. Deutsche Bank, on behalf of Rali 2006 QS5, as defendants filing the expedited fore[c]losure lawsuit may no longer own the Trust due to its liquidation as most have been divested." Ps. Resp. 16.

B

As the court concluded in *Wilson I* and *Wilson II*, the Thomases have failed to plead sufficient facts to permit a reasonable inference that Deutsche Bank lacks authority to foreclose and that the Thomases are therefore entitled to the relief they seek. As a preliminary matter, the Thomases' assertion that there is a possibility of a defect in the assignment based on the liquidation of the trust is too conclusory to credit in the context of a Rule 12(b)(6) motion to dismiss. *See Wilson v. Deutsche Bank Tr. Co. Ams.* (*Wilson II*), 2019 WL 2578625, at *6 (N.D. Tex. June 24, 2019) (Fitzwater, J.) (quoting *Wilson v. Deutsche Bank Tr. Co. Ams.*, 2019 WL 175078, at *3 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.)). Moreover, as explained in *Wilson II*, the Thomases' demands for more evidence improperly attempt to shift the burden of proof to defendants. *See Wilson II*, 2019 WL 2578625 at *6.

The Thomases have thus failed to plausibly allege that defendants lack authority to foreclose because of some defect in the assignment. The Thomases' speculative allegation that Deutsche Bank may no longer have authority to foreclose due to the recent liquidation of the trust is insufficient to state a plausible claim for relief. Accordingly, to the extent the Thomases have attempted to bring a claim based on defendants' lack of authority to foreclose on their property, the court dismisses this claim.

VII

The court now turns to defendants' motion to dismiss the remaining claims: § 1413 of the Dodd-Frank Act, 15 U.S.C. § 1640(k); 12 C.F.R. §§ 1024.37, 1024.38, and 1026.36(c);

and 12 U.S.C. § 2605(c). The court raises grounds for dismissal of each claim *sua sponte*.[11]

"This court may dismiss a case for failure to state a claim even if it does so based on arguments that defendants did not themselves raise." *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.) (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991)). "Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair." *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller*, Federal Practice & Procedure* § 1357, at 301 (2d ed. 1990) (footnote omitted)). To ensure that the procedure is fair, the court will allow the Thomases 21 days from the date this memorandum opinion and order is filed to replead in an effort to plead plausible claims under § 1413 of the Dodd-Frank Act, 15 U.S.C. § 1640(k); 12 C.F.R. §§ 1024.37, 1024.38, and 1026.36(c); and 12 U.S.C. § 2605(c).

---

[11]Defendants move to dismiss the Thomases' remaining "new RESPA claims" as time-barred. Although 12 U.S.C. § 2614 provides that a claim under 12 U.S.C. § 2605 must be brought within three years "from the date of the occurrence of the violation," defendants allege that the Fifth Circuit has interpreted the "date of the occurrence" to mean the date of the closing of the loan. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003). Because the Thomases' loan closed in 2006, defendants maintain that new allegations of RESPA violations are time-barred as having been alleged more than 12 years after the date of closing.

Contrary to defendants' contentions, the Fifth Circuit has held that claims arising under 12 U.S.C. § 2605 accrue when the alleged violation occurs, which is not necessarily the date of closing. *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629-30 (5th Cir. 2014) (holding that transferee's failure to notify the borrower of the transfer was within the statute of limitations). But because the court is raising alternate grounds for dismissal *sua sponte*, it need not address defendants' contentions regarding the statute of limitation as they pertain to the remaining claims.

## VIII

The court turns to the question whether the Thomases have stated a claim under §
1413 of the Dodd-Frank Act, 15 U.S.C. § 1640(k).

### A

15 U.S.C. § 1640(k)(1) applies when a lender has violated § 1639b(c)(1)-(2) or §
1639c(a), which requires, *inter alia*, that creditors and assignees make a good faith
determination of a consumer's ability to repay before issuing a residential loan. *See* 15
U.S.C. §§ 1639b(c)(1)-(2), 1639c(a). Under § 1640(k)(1), a consumer can raise the failure
to assess the borrower's ability to repay "when a creditor, assignee, or other holder . . .
initiates a judicial or nonjudicial foreclosure of the residential loan, or any other action to
collect the debt . . . without regard for the time limit on a private action[.]" *Id.* § 1640(k)(1).
But to obtain the benefit of the extended statute of limitations, the consumer must raise the
violation "as a matter of defense by recoupment or set off[.]" *Id.*

### B

The Thomases allege that Deutsche Bank and Trust Americas, as a successor or
assignee of Wachovia Bank, failed to comply with the ability to repay provision of TILA by
failing to properly consider the impact of the Thomases' debt-to-income and residual income
ratio, their commission-only careers, and the amount they would be required to spend on
home maintenance before granting the home equity loan in 2006. The Thomases allege that,
by failing to complete a proper "ability to repay" assessment, Deutsche Bank allegedly "gave
the plaintiffs a sub-prime loan that immediately set them up for failure[.]" 3d Am. Compl.

21. They maintain that a claim that Deutsche Bank violated the "ability to repay" provision is not time-barred because there is no statute of limitations on a recoupment and set off.

C

The court concludes that the Thomases' claim for recoupment or set off under § 1413 of the Dodd-Frank Act, 15 U.S.C. § 1640(k)(1), due to alleged violations of §§ 1639b and 1639c fails because it was not raised "as a matter of defense." Although § 1640(k)(1) provides a defense by recoupment or set off "without regard for the time limit on a private action for damages[,]" § 1640(k)(1) only extends the statute of limitations for claims against a creditor when raised *as a matter of defense* to a foreclosure action. *See Derbabian v. Bank of Am., N.A.*, 587 Fed. Appx. 949, 955 (6th Cir. 2014) (holding that expanded statute of limitations did not apply to action against nonjudicial foreclosure because recoupment claim was not raised as defense to foreclosure action brought by lender).

Here, by bringing a claim for recoupment or set off, the Thomases are attempting to use the provision as an offensive right of action against their creditors rather than an affirmative defense to an action brought against them. Because the instant action was not initiated by defendants, but instead was brought by the Thomases, 15 U.S.C. § 1640(k)(1) is inapplicable. *See Hibner v. Regions Bank*, 2018 WL 3552350, at *3 (W.D. Tenn. July 24, 2018) ("§ 1640(k)(1) has no applicability when a borrower sues a lender under TILA."); *see also Mullen v. Se. Bank*, 2018 WL 2445129, at *2 n.1 (M.D. Tenn. May 31, 2018) (holding that in an action seeking to prevent foreclosure, § 1640(k) is "not substantively relevant"

because it does not apply to offensive TILA claims).[12]

Therefore, because the Thomases' action is offensive, they may not obtain the benefit of an extended statute of limitations reserved for use "as a matter of defense." Any offensive TILA claims relating to the Thomases' 2006 mortgage, including their claims under §§ 1639b and 1639c, have thus expired even under the TILA's longer three-year statute of limitations. *See* § 1640(e) ("Any action under this section with respect to any violation of section . . . 1639b[] or 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation."). The Thomases explicitly plead that the violations giving rise to their § 1640(k)(1) claim stem from the "appli[cation] for the home equity loan in 2006." 3d Am. Compl. 21. Therefore, the statute of limitations bars the Thomases' claims as well beyond the three years provided by statute. Accordingly,

---

[12]Several courts have held that 15 U.S.C. § 1640(k) does not apply where a borrower brings an action against its lender. *See Walker v. Nationstar Mortg. LLC*, 2017 WL 588465, at *2 (D. Md. Feb. 13, 2017) ("Because the instant case is not a foreclosure action, and because the Walkers are plaintiffs, the TILA does not allow them to invoke recoupment."); *Pitts v. Wells Fargo Bank*, 2015 WL 5728879, at *4 (D.D.C. Sept. 29, 2015) ("Because Plaintiffs assert TILA violations as affirmative claims, rather than defenses to foreclosure, § 1640(k) does not allow them to assert those violations without regard to time limit."); *Bhandari v. Capital One, N.A.*, 2013 WL 1736789, at *5 (N.D. Cal. Apr. 22, 2013) (same); *Qadeer v. Bank of Am., N.A.*, 2013 WL 424776, at * 4 (E.D. Mich. Feb. 4, 2013) (same).

These courts' holdings accord with the Fifth Circuit's interpretation of a similar provision, § 1640(e), which states that the statute of limitations provision "does not bar a person from asserting a violation . . . in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action[.]" In *Moor v. Travelers Ins. Co.*, 784 F.2d 632 (5th Cir. 1986), the Fifth Circuit held that the plaintiff could not avoid the statute of limitations under a recoupment theory because the plaintiff initiated the suit. *Id.* at 634. The court concluded that, "[w]hen the debtor hales the creditor into court . . . the claim by the debtor is affirmative rather than defensive." *Id.*

the court dismisses the Thomases' claim for recoupment or set off under § 1413 of the Dodd-Frank Act, 15 U.S.C. § 1640(k)(1), and their related TILA claims as time-barred.

IX

The court considers next whether the Thomases have pleaded a plausible claim under 12 C.F.R. § 1024.37.

A

Section 1024.37(a) provides that a servicer may not impose force-placed hazard insurance without a reasonable basis, and it mandates compliance with a variety of requirements. *See* 12 C.F.R. § 1024.37(a). The regulation also provides that a servicer must cancel any force-placed hazard insurance and refund the charges to the borrowers within 15 days of the borrowers' demonstrating proof that they had existing coverage. *Id.* § 1024.37(g).

The Thomases contend that "GMAC-later Ocwen" violated 12 C.F.R. § 1024.37, thereby exhibiting a pattern and practice of noncompliance with RESPA. They allege that they notified GMAC of "2 forced placed insurance entries on their statements exceeding $5,000 per year . . . when plaintiffs had coverage with USAA at a rate of approximately $1500.00 per year." 3d Am. Compl. 18. The Thomases maintain that their insurance agent sent confirmation of their insurance in 2016. They therefore request that the funds from the forced-placed insurance be credited back.

Defendants rely on a case from the Southern District of Florida, maintaining that "violations of [12 C.F.R. § 1024.37] are not privately enforceable." Ds. Mot. 7 n.2 (citing

*Wing Kei Ho v. Bank of Am., N.A.*, 2016 WL 8679254, at *2 (S.D. Fla. June 21, 2016)); *see also Iaffaldano v. Sun W. Mortg. Co.*, 2018 WL 2221872, at *4 (S.D. Fla. Feb. 21, 2018) (citing *Wing Kei Ho*, 2016 WL 8679254, at *2), *aff'd*, 768 Fed. Appx. 907 (11th Cir. 2019)). Defendants contend for this reason that the Thomases' § 1024.37 claim must be dismissed.

B

There is conflicting authority on whether 12 C.F.R. § 1024.37 confers a private right of action, and the Fifth Circuit has not decided this question. But because the court concludes that the Thomases' claim fails for another reason, it will assume *arguendo* that there is a private right of action.

The court holds that the Thomases' allegations are inadequate to state a claim under 12 C.F.R. § 1024.37. Although the Thomases do not specifically identify a subsection that they contend defendants violated under § 1024.37, their allegations most closely track § 1024.37(g). Section 1024.37(g) provides that "[w]ithin 15 days of receiving, from the borrower or otherwise, evidence demonstrating that the borrower has had in place hazard insurance coverage that complies with the loan contract's requirements," a servicer must cancel the force-placed insurance and refund the charges to the borrower. 12 C.F.R. § 1024.37(g)(1)-(2).

The Thomases allege that they notified their servicer of two force-placed insurance entries despite the fact that they had existing coverage, and that their insurance provider sent confirmation of insurance in 2016. But the Thomases do not allege that the insurance they had in place "complie[d] with the loan contract's requirements," as 12 C.F.R. § 1024.37(g)

requires. In the absence of this essential component, the court cannot draw the reasonable inference that the force-placed insurance was placed in violation of 12 C.F.R. § 1024.37(g). *See Aguilar v. Ocwen Fin. Corp.*, 2015 WL 12659913, at *4 (C.D. Cal. Jan. 27, 2015) ("A claim for a violation of § 1024.37 requires more than the sole allegation that a servicer force-placed insurance despite knowledge that the borrower had insurance."); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

To the extent the Thomases intend to allege other violations of § 1024.37—such as failure to provide notice in compliance with the regulation—they have failed to plead sufficient facts for the court to reasonably infer that a violation occurred. The court therefore dismisses the Thomases' § 1024.37 claim.

## X

The court now considers whether the Thomases have plausibly pleaded a claim for relief under 12 C.F.R. § 1024.38.

### A

Section 1024.38 requires that loan servicers implement reasonable policies and procedures. *See* 12 C.F.R. § 1024.38. The regulation specifically requires servicers to "investigate, respond to, and as appropriate, make corrections in response to complaints," to "[p]rovide a borrower with accurate and timely information . . . in response to the borrower's request for information," and to properly evaluate loss mitigation applications by

evaluating a borrower "for all loss mitigation options for which the borrower may be eligible[.]" *Id.* § 1024.38(b)(ii), (iii), (2)(v).

The Thomases allege that Ocwen violated 12 C.F.R. § 1024.38 in 2016 by failing to accurately respond to an email regarding its loan modification from 2009 and failing to further investigate payments that the Thomases alleged were misapplied. They also aver that Ocwen violated several other subsections of § 1024.38 by failing to properly evaluate their loss mitigation application and proceeding with foreclosure instead. The Thomases allege that these violations entitle them to relief and demonstrate an "institutionalized practice of non-compliance with RESPA," for which they request "actual and statutory damages for violation of the rule." 3d Am. Compl. 16.

B

To the extent the Thomases assert 12 C.F.R. § 1024.38 as a claim for relief rather than merely as evidence of Ocwen's alleged pattern and practice of noncompliance with RESPA, the court concludes they have failed to plead a plausible claim because "RESPA does not create a private right of action to enforce Section 1024.38[]." *Longmire v. Wells Fargo Bank, N.A.*, 2017 WL 4075187, at *3 (N.D. Tex. Aug. 16, 2017) (Horan, J.), *rec. adopted*, 2017 WL 4022888 (N.D. Tex. Sept. 13, 2017) (Lynn, C.J.). In its explanation of the final rule, the CFPB stated that it would rely on the "supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38" to "provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38." Mortgage Servicing

Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10778 (Feb. 14, 2013). The CFPB reasoned that "allowing a private right of action for the provisions that set forth general servicing policies, procedures and requirements would create a significant litigation risk" and therefore restructured "the final rule so that it neither provides private liability for violations of § 1024.38 nor contains a safe harbor[.]" *Id.* at 10778, 10779. To further ensure that there would be no private right of action under § 1024.38, the CFPB "no longer rel[ied] on its authorit[y] under section 6 of RESPA," which carries with it a private right of action, but instead adopted the rule "pursuant to [its] section 19(a)" authority. *Id.* at 10779. Because the court holds that § 1024.38 does not provide a private right of action, the Thomases cannot plead a plausible claim under this rule as a matter of law, and the claim is therefore dismissed.

XI

The court next considers whether the Thomases have pleaded a plausible claim under 12 C.F.R. § 1026.36(c).

A

Section 1026.36(c)(1)(i) prohibits a servicer from "fail[ing] to credit a periodic payment to the consumer's loan account as of the date of receipt[.]" *Id.* Section 1026.36(c)(1)(ii) provides that, when a servicer retains partial payments, the servicer must "[d]isclose to the consumer the total amount of funds held in such suspense or unapplied funds account on the periodic statements" and "treat such funds as a periodic payment received in accordance with paragraph (c)(1)(i)[.]" *Id.* § 1026(c)(1)(ii)(A), (B).

The Thomases allege that Ocwen violated "RESPA § 1026(c)[(1)](i)[-](ii)" by misapplying payments on their loan account in 2009 in accordance with their loan modification, and that evidence provided by Ocwen's ombudsman in 2016 revealed that these payments were improperly applied. The Thomases posit that two of their 2009 payments have neither been returned to them nor applied as a loan modification. They allege that Ocwen explained that it had no record of a loan modification transferred from GMAC, and that Ocwen "recharacterized" the payments as forbearance rather than a loan modification, despite having never sent any forbearance-related documents or disclosures in 2016. 3d Am. Compl. 17.

B

The court concludes that the statute of limitations bars the Thomases' claim under 12 C.F.R. § 1026.36(c). Although the Thomases characterize their § 1026.36(c) claim as a RESPA claim, which would subject the claim to a three-year statute of limitations, § 1026.36 was promulgated as part of Regulation Z to implement TILA, which has a much shorter statute of limitations for most claims. *See Mastin v. Ditech Fin., LLC*, 2018 WL 524871, at *2 n.2 (E.D. Va. Jan. 23, 2018) ("Plaintiffs seemingly characterize . . . 12 C.F.R. § 1026.36(c)(1)(ii) as one contained in RESPA's implementing regulation," but 12 C.F.R. § 1026, "known as 'Regulation Z,' was promulgated under the authority of, and with the intention of implementing, TILA."); *see also In re Davis*, 2014 WL 1339720, at *2 (N.D. Ill. Apr. 3, 2014) ("The regulation that implements TILA is commonly referred to as 'Regulation Z'. It was codified at 12 C.F.R. [§] 226 until 2011, when it was re-codified at 12 C.F.R. [§]

1026."); Truth in Lending (Regulation Z), 76 Fed. Reg. 79768, 79769, 79916 (Dec. 22, 2011) ("The [CFPB] is issuing this interim final rule [§ 1026] pursuant to its authority under TILA and the Dodd-Frank Act. . . . This commentary is the vehicle by which the [CFPB] issues official interpretations of Regulation Z. . . . [C]ompliance with this commentary affords protection from liability under section 130(f) of [TILA].").

With exceptions not applicable here, claims under TILA and Regulation Z must be brought within one year of the date of the occurrence of the violation.[13] *See* 15 U.S.C. § 1640(e); *see also Val-Com Acquisitions Tr. v. Bank of Am., N.A.*, 2011 WL 2312284, at *3 (N.D. Tex. June 9, 2011) (Lynn, J.) (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)) (dismissing plaintiffs' TILA and Regulation Z claims as time-barred under the one-year statute of limitations). Thus whether the violation of 12 C.F.R. § 1026.26(c)(1) occurred in 2006, when the loan closed (as defendants contend), in 2009, when the loan modification and misapplication occurred, or in 2016, when the Thomases maintain that they discovered the violation and Ocwen "recharacterized" the payment, it is apparent from the face of the Thomases' third amended complaint that their § 1026.36 claim is barred by TILA's one-year statute of limitations. Accordingly, the court dismisses the claim under §

---

[13]Section 1640(e) provides for an extended statute of limitations of three years for violations of 15 U.S.C. §§ 1639, 1639b, or 1639c. As the Seventh Circuit noted, 12 C.F.R. § 1026.36(c)(1)(i) of Regulation Z implements and repeats the language of 15 U.S.C. 1639f(a). *See Fridman v. NYCB Mortg. Co.*, 780 F.3d 773, 775-76 (7th Cir. 2015). Because the violations the Thomases allege do not arise under any of the statutes that would give rise to an extended statute of limitations for private claims, the one-year statute of limitations controls here.

1026.36(c) as time-barred.

XII

Finally, the court considers the Thomases' claim that Ocwen violated 12 U.S.C. § 2605(c).

A

Section 2605(c), entitled "Notice by transferee of loan servicing at the time of transfer[,]" requires a "transferee servicer to whom the . . . loan is assigned, sold, or transferred" to "notify the borrower of any such assignment, sale, or transfer." 12 U.S.C. § 2605(c)(1). The notice must be provided to the borrower "not more than 15 days after the effective date of transfer of the servicing of the mortgage loan," or "not more than 30 days after the effective date of assignment, sale, or transfer" of the loan when the transfer of the loan is preceded by occurrences not pertinent here. *Id.* § 2605(c)(2)(A), (B).

The Thomases allege that Ocwen violated 12 U.S.C. § 2605(c) "by failing to respond to an email about Ocwen's failure to halt the expedited foreclosure hearing scheduled . . . for June 21, 2017." 3d Am. Compl. 18. They maintain that they emailed Ocwen on May 17, 2017, explaining to the servicer that foreclosure proceedings had not been halted, contrary to an email they allegedly received from Ocwen on May 5, 2017. They also allege that the court clerk received no notice to cancel the hearing.

B

The court holds that the Thomases have failed to allege sufficient facts on which the court can reasonably infer a violation of 12 U.S.C. § 2605(c). By its plain language, the

statute applies to notice by a transferee of loan servicing "at the time of transfer." 12 U.S.C. § 2605(c). This provision does not impose a continuing communication requirement on a servicer beyond giving notice of a transfer, whether the transfer was achieved by assignment, sale, or another means. Therefore, it is unclear how Ocwen could have violated this section by failing to respond to the Thomases' email, which was unrelated to a notification of the loan's transfer.

The court's conclusion is bolstered by the implementing regulations. 12 C.F.R.§ 1024.33(b), entitled "Notices of transfer of loan servicing," provides that "each transferor servicer and transferee servicer of any mortgage loan shall provide to the borrower a notice of transfer for any assignment, sale, or transfer of the servicing of the mortgage loan." *Id.* § 1024.33(b)(1). The regulation mandates that the notice contain "the information described in paragraph (b)(4) of this section." *Id.* Section 1024.33(b)(4) merely requires that the transferee provide information related to the transfer of the loan, including the effective date of transfer, contact information of the transferee and transferor servicers that can be used to obtain answers to servicing transfer inquiries, the date on which the transferor will stop accepting payments, the transfer's impact on mortgage insurance, and a statement that the transfer does not affect any term or condition of the loan. *See id.* § 1024.33(b)(4)(i)-(vi).

The Thomases have failed to plead any facts that enable the court to draw the reasonable inference that Ocwen, as an alleged transferee servicer, failed to provide notice of the loan transfer. In fact, the Thomases allege that they "received a letter offering them a loan modification from *new* transferee servicer, Ocwen," and the Thomases subsequently

initiated a loss mitigation application that was never receipted or completed in 2016. 3d Am. Compl. 5 (emphasis in original). The reasonable inference to be drawn from these allegations is that the Thomases received notice of the transfer. Further, the Thomases fail to allege that any notice that may have been given was inadequate or deficient under the statute and its implementing regulations. Because the court concludes that the statute applies to notices of transfer, not ancillary actions taken regarding the loan, and the Thomases have pleaded no facts regarding lack of notice or deficiencies in such a notice, the court dismisses the Thomases' 12 U.S.C. § 2605(c) claim.

## XIII

The court turns now to the Thomases' motion for leave to supplement their third amended complaint. This motion is not mooted by the court's decision to permit the Thomases to replead. As the court states *infra* at § XIII(c)(5), as a matter of procedural fairness, the court is granting the Thomases leave to replead the claims that it is today dismissing *sua sponte*, not to replead generally.

## A

The Thomases seek leave to supplement their complaint with the allegation that "defendants, through violation of 12 C.F.R. [§] 1024.41 . . . prevented plaintiffs from taking tax planning action while the Mortgage Debt Forgiveness Act [("the Act")] . . . was still in effect." Ps. Mot. 2. They contend that, if Ocwen had complied with the loss mitigation application procedures in 2017, they would have been able to minimize or eliminate their potential tax exposure under the Act. The Thomases maintain that, because Ocwen did not

provide "numbers for a deed in lieu of foreclosure or straight foreclosure" when the Thomases' loss mitigation application was submitted and when the losses could have been avoided, they will be liable for a capital gains tax assessment upon foreclosure, which has not yet occurred. *Id.* at 3.

Defendants oppose the Thomases' motion. They maintain that the Thomases' have already had three opportunities to plead plausible claims and permitting them to supplement their third amended complaint would only delay the ruling on defendants' motion to dismiss. Defendants also assert that, because dispositive motion deadlines have or will soon elapse, granting the Thomases leave to supplement would prejudice defendants and only cause further delay in resolving the case. They also contend that the Thomases' 12 C.F.R. § 1024.41 claim fails as a matter of law and therefore supplementing this specific claim with additional damages would be futile.

The Thomases reply that their motion for leave to supplement is not intended to delay the action but is based on newly-acquired information that the Act likely will not be renewed. They contend that defendants will not suffer any prejudice because the issues regarding their 12 C.F.R. § 1024.41 claim are otherwise fully briefed in their third amended complaint, and the supplement only adds damages to this claim. Finally, the Thomases assert that the request for leave to supplement is not futile because they are genuinely harmed by the tax liability exposure due to Ocwen's failure to comply with RESPA in 2017, when the Act was still in effect.

When, as here, the deadline to amend pleadings has expired, a court considering a motion to amend or supplement pleadings must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard.[14] *See S & W Enters., L.L.C. v. S. Tr. Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536*; Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend or supplement: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb.

---

[14]The court entered a scheduling order on June 6, 2018 that set August 20, 2018 as the deadline for a party to file a motion for leave to amend the pleadings. The Thomases' filed their motion for leave to supplement their complaint on September 10, 2019, over one year after the deadline. Amendment as a matter of course under Rule 15(a)(1) is inapposite because the motion was filed almost two months after the Thomases' July 22, 2019 third amended complaint and over 35 days after defendants' August 5, 2019 motion to dismiss.

9, 2009) (Fitzwater, C.J.).  Mere inadvertence on the part of the movant is insufficient to constitute "good cause."  *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 248523, at *2 (N.D. Tex. Jan. 26, 2011) (Fitzwater, C.J.).  Instead, the movant must show that, despite its diligence, it could not have reasonably met the scheduling deadline.  *See Am. Tourmaline Fields*, 1998 WL 874825, at *1.  But "[w]hen a party files an untimely motion for leave to amend and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone."  *Wachovia Bank Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.).

Although the Thomases move to supplement under Rule 15(d) and make no mention of Rule 16(b)(4), their motion implicitly addresses several of the factors that are pertinent to the Rule 16(b)(4) analysis.  Therefore, the court will not deny their motion based on their failure to explicitly address good cause.  *See, e.g., Grimsley v. Methodist Richardson Med. Ctr. Found., Inc.*, 2011 WL 825749, at *5-6 (N.D. Tex. Mar. 3, 2011) (Fitzwater, C.J.) (analyzing the Rule 16(b)(4) factors although the *pro se* movant "ha[d] not explicitly addressed the good cause standard of Rule 16(b)(4)"); *see also Harrison v. Wells Fargo Bank, N.A.*, 2015 WL 1649069, at *9 (N.D. Tex. Apr. 14, 2015) (Fitzwater, C.J.) ("[T]he court has made exceptions in cases where the movant does not address the Rule 16(b)(4) good cause standard but the grounds on which he relies to establish good cause are relatively clear.").

C

1

As to the first factor, which considers the movants' explanation for the delay, the Thomases allege that, until recently, they were unaware that the Act would not be renewed. But the plain language of the statute indicates that, before the Thomases filed suit on March 9, 2018, they should have been aware that the Act might not be extended beyond 2017. The current version of the Act excludes from gross income "qualified principal residence indebtedness which is discharged *before January 1, 2018*," or "[qualified principal residence indebtedness] subject to an arrangement that is entered into and evidenced in writing *before January 1, 2018*." 26 U.S.C. § 108(a)(1)(E) (emphasis added). The Act was last extended on February 9, 2018 in the Bipartisan Budget Act of 2018, one month before the Thomases filed suit and almost two years before they filed the instant motion. *See* Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 40201, § 108(a)(1)(E), 132 Stat. 64 ("Section 108(a)(1)(E) is amended by striking 'January 1, 2017' each place it appears and inserting 'January 1, 2018'"). Thus the Thomases should have been aware well before they filed their September 10, 2019 motion for leave to supplement the third amended complaint that the Act might not apply to any foreclosures beyond 2017.

The Thomases' recent awareness that the Act would not apply to any future foreclosures is not an adequate explanation for their late request to supplement. "Lack of knowledge regarding the law . . . does not constitute good cause to amend a scheduling order." *Conceal City, L.L.C. v. Looper Law Enf't, LLC*, 2013 WL 5786281, at *4 (N.D. Tex.

Oct. 28, 2013) (Fitzwater, C.J.); *see also Escribano v. Travis Cty., Tex.*, 2016 WL 8856918, at *2 (W.D. Tex. Aug. 25, 2016) ("[T]he fact that Plaintiffs were unaware of the relevant law prior to discovery is not a compelling explanation for waiting to amend their pleading until three months after the scheduling order deadline.").  This is especially the case where, as here, all relevant facts, including Ocwen's alleged failure to comply with the loss mitigation procedures and the potential of foreclosure, have been known to the Thomases since the time of filing.  *See Conceal City, L.L.C.*, 2013 WL 5786281, at *4 (quoting *Am. Tourmaline Fields*, 1998 WL 874825, at *1) ("[T]he court can deny a motion to amend the scheduling order if the movant 'knows or should have known of the facts upon which the proposed amendment is based.'").  Moreover, the Thomases have had three opportunities to uncover and plead the potential tax liability as damages, but have failed to do so until now.  For these reasons, the court finds that this factor weighs against a finding of good cause.

2

Under the second factor, the court considers the importance of the amendment.  The Thomases allege that, although the foreclosure has not yet occurred, they will have "no other opportunity to show the Court the tax consequence of the dual tracking violation if and when the foreclosure takes place after the disposition of this case." Ps. Mot. 2.  Thus the Thomases appear to raise a preclusion argument—that is, if foreclosure occurs after the resolution of this case, they will incur tax consequences as a result of defendants' RESPA violation, without the ability to bring another RESPA claim against them because that claim will already have been adjudicated.

The importance of this argument is undercut by the speculative nature of the damages the Thomases seek to add. Foreclosure has not yet occurred. Because the Thomases seek to add damages that are contingent on uncertain future events, the court concludes that the importance factor weighs slightly against a finding of good cause. *See Morris v. McDonald*, 2015 WL 1546436, at *3 (W.D. Tex. Apr. 6, 2015) ("The Court notes that even without the amendment, Plaintiff would still have claims to prosecute against Defendant. Denying the Motion would therefore not preclude Plaintiff from all relief. . . . Accordingly, this factor supports denying the Motion.").

3

The third factor contemplates the potential prejudice to the nonmovants. Defendants contend that the 12 C.F.R. § 1241.41 claim pleaded in the Thomases' last amended complaint fails as a matter of law and that their proposed supplement is therefore futile. The court disagrees. As already explained, the Thomases have succeeded in pleading a plausible claim under 12 C.F.R. § 1241.41. Their allegation of additional damages to an already fully-briefed claim causes no unfair surprise or delay in ruling on the pending motions in the case. The court therefore finds that the supplement would not prejudice defendants and that this factor weighs in favor of good cause.

4

The fourth factor considers the availability of a continuance to cure any prejudice. Given the absence of prejudice, the court need not address this factor.

The court now considers the factors holistically. "It does not mechanically count the number of factors that favor each side." *Harrison*, 2015 WL 1649069, at *11 (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 14, 2009) (Fitzwater, C.J.)). Assessing the factors as a whole, the court concludes that the Thomases have not established good cause for their failure to assert additional damages in support of their RESPA claim. The Thomases filed their complaint in March 2018, at which point they should have been aware that the Act might not apply to any future foreclosures. For this reason, the court finds that the Thomases have failed to demonstrate that, despite their diligence, they could not have reasonably met the deadline in the scheduling order or in the multiple opportunities the court has provided them to amend their complaint. The Thomases' lack of diligence and the speculative nature of the damages they seek to add do not warrant a finding of good cause. *See Mallory v. Lease Supervisors, LLC*, 2019 WL 3253364, at *4 (N.D. Tex. July 19, 2019) (Fitzwater, J.) (quoting *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *3 (N.D. Tex. Aug. 7, 2015 (Fitzwater, J.)) ("Courts deny motions to amend the scheduling order when the moving part[ies] fail[] to demonstrate that, despite [their] diligence, [they] could not have reasonably met the scheduling deadline.").

For these reasons, the court denies the Thomases' motion for leave to supplement their complaint. Thus, although as a matter of procedural fairness the court is granting the Thomases leave to replead the claims that it is dismissing *sua sponte*, the court declines to permit the Thomases to supplement their 12 C.F.R. § 1024.41 claim because they have failed

to carry their burden of demonstrating good cause under Rule 16(b)(4).

* * *

Accordingly, the court grants in part and denies in part defendants' motion to dismiss, overrules the Thomases' objection, and raises *sua sponte* grounds for dismissing some of the Thomases' claims. The court denies plaintiffs' motion to supplement. The Thomases may file an amended complaint within 21 days of the date this memorandum opinion and order is filed. If they fail to replead, the claims dismissed *sua sponte* under this memorandum opinion and order will remain dismissed. If they replead, Deutsche Bank and PHH may move anew to dismiss, if they have grounds to do so.

**SO ORDERED**.

November 7, 2019.

SIDNEY A. FITZWATER
SENIOR JUDGE