IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSAN LYNN WILSON (THOMAS), §
et al., §
 §
    Plaintiffs, §
 § Civil Action No. 3:18-CV-0854-D
VS. §
 §
DEUTSCHE BANK TRUST §
COMPANY AMERICAS, AS §
TRUSTEE FOR RESIDENTIAL §
ACCREDIT LOANS, INC., §
MORTGAGE ASSET-BACKED §
PASS-THROUGH CERTIFICATES, §
SERIES 2006-QS5, et al., §
 §
    Defendants. §

MEMORANDUM OPINION
AND ORDER

  Defendants PHH Mortgage Corporation d/b/a PHH Mortgage Services, successor by merger to Ocwen Loan Servicing LLC ("Ocwen"), and Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS5 ("Deutsche Bank"), move under Fed. R. Civ. P. 12(b)(6) to dismiss the claims of *pro se* plaintiffs Susan Lynn Wilson (Thomas) and Tommy Thomas that the court dismissed *sua sponte* when addressing defendants' prior motion to dismiss. The Thomases oppose the motion and request that the court reconsider its decision denying their motion to supplement their third amended complaint. For the reasons that follow, the court grants defendants' motion to dismiss, disregards the Thomases' repleading as to claims not dismissed, and declines to reconsider its ruling on the Thomases' motion to

supplement. This case will continue based on the claims that the court has previously declined to dismiss.

I

Because this case is the subject of multiple prior opinions,[1] the court need not recount the background facts at length. It will instead set out the background facts and procedural history necessary to understand the present decision.

In March 2018 the Thomases filed suit against Deutsche Bank and Ocwen in state court, asserting claims related to the servicing of a home equity loan secured by the Thomases' residence and to subsequent foreclosure proceedings. In their third amended complaint, the Thomases alleged that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), and subsections of its implementing regulations, 12 C.F.R. § 1024.41, by "dual tracking" the Thomases' loss mitigation application. They also asserted that Ocwen violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1639h, by failing to perform an adequate appraisal in conjunction with their request

---

[1]This action is the subject of three prior opinions. In *Wilson v. Deutsche Bank Trust Co. Americas*, 2019 WL 175078, at *1 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.), the court granted the Rule 12(b)(6) motion to dismiss of Deutsche Bank and Ocwen, and granted the Thomases leave to replead some, but not all, of their claims. In *Wilson v. Deutsche Bank Trust Co. Americas* (*Wilson II*), 2019 WL 2578625, at *1 (N.D. Tex. June 24, 2019) (Fitzwater, J.), the court granted defendants' Rule 12(b)(6) motion to dismiss the Thomases' second amended complaint and permitted the Thomases to replead. In *Wilson v. Deutsche Bank Trust Co. Americas* (*Wilson III*), 2019 WL 5840325, at *1 (N.D. Tex. Nov. 7, 2019) (Fitzwater, J.), the court granted in part and denied in part defendants' Rule 12(b)(6) motion to dismiss, and granted plaintiffs leave to replead the claims that the court dismissed *sua sponte*.

for loss mitigation, and they challenged Deutsche Bank's authority to foreclose based on alleged inaccuracies in the assignment process. The Thomases also asserted a claim under § 1413 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 1640(k), as well as additional RESPA claims, including that defendants violated 12 C.F.R. § 1024.37 by placing forced-placed insurance when the Thomases already had coverage; violated § 1024.38 by allegedly failing to maintain reasonable practices and procedures in communicating with borrowers; violated § 1026.36 by misapplying loan payments; and violated 12 U.S.C. § 2605(c) by failing to respond to the Thomases' email regarding the expedited foreclosure. The Thomases also asserted a claim for statutory damages under § 2605(f)(1)(B) for the defendants' alleged "pattern and practice of noncompliance" with RESPA.

In *Wilson v. Deutsche Bank Trust Co. Americas* (*Wilson III*), 2019 WL 5840325, at *1 (N.D. Tex. Nov. 7, 2019) (Fitzwater, J.), the court denied defendants' Rule 12(b)(6) motion to dismiss the Thomases' 12 C.F.R. § 1024.41 and "pattern and practice of noncompliance" claim under § 2605(f)(1)(B), but it granted the motion as to all other claims, including some claims on grounds that the court raised *sua sponte*. The court also denied the Thomases' request to supplement their complaint, but it granted them leave to replead the claims on which the court had raised the grounds for dismissal *sua sponte*. The Thomases, in turn, repleaded their claims, and they request that the court reconsider its decision denying their motion to supplement their complaint. Defendants move to dismiss the Thomases'

claims for relief under 15 U.S.C. § 1640(k), 12 C.F.R. §§ 1024.35, 1024.39, and 1026.36.[2]

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, the Thomases must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to

---

[2]As defendants note in their motion, Ds. Mot. 9 n.2, the Thomases did not replead a claim under 12 U.S.C. § 2605(c). Therefore, the court need not address any arguments related to this dismissed claim.

relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court turns first to the question whether the Thomases have stated a claim under 15 U.S.C. § 1640(k).

A

15 U.S.C. § 1640(k)(1) provides:

> Notwithstanding any other provision of law, when a creditor, assignee, or other holder of a residential mortgage loan or anyone acting on behalf of such creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 1639b(c) of this title, or of section 1639c(a) of this title, as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e).

15 U.S.C. § 1640(k)(1) applies when a lender has violated § 1639b(c)(1)-(2) or § 1639c(a), which requires, *inter alia*, that creditors and assignees make a good faith determination of a consumer's ability to repay before issuing a residential loan. *See* 15 U.S.C. §§ 1639b(c)(1)-(2), 1639c(a). Under § 1640(k)(1), a consumer can raise the failure to assess the borrower's ability to repay "when a creditor, assignee, or other holder . . . initiates a judicial or nonjudicial foreclosure of the residential loan, or any other action to collect the debt . . .

without regard for the time limit on a private action[.]" *Id.* § 1640(k)(1). But to obtain the benefit of the extended statute of limitations, the consumer must raise the violation "as a matter of defense by recoupment or set off[.]" *Id.*

B

The Thomases contend that defendants violated § 1640(k) by failing to engage in a good faith determination of the Thomases' ability to repay the loan based on verified, documented information. They allege that they were full time, commission only licensed real estate agents at the time they applied for the loan, and that "[t]heir income to debt ratio and savings were insufficient to meet any economic event such as the market collapse of 2008." 4th Am. Compl. 4. The Thomases assert that defendants failed to consider the basis for the Thomases' expected income, "failed to consider payments for mortgage related obligations," and "failed to consider residual income to cover unplanned expenses[.]" *Id.* Because defendants allegedly "plac[ed] plaintiffs in a sub prime loan that immediately set them up for failure," and failed to make a good faith determination of the Thomases' ability to repay, they "seek recoupment as a defense to foreclosure[.]" *Id.*

Defendants maintain that relief under § 1640(k) is not available to the Thomases because they initiated suit and their claim has not been raised "as a matter of defense." Ds. Mot. at 4. The Thomases respond that bringing suit against defendants was "a defensive measure" because "[a]lthough the Thomases are the plaintiffs in this case, they are the defendants [in] the expedited foreclosure order" pursuant to Tex. R. Civ. P. 736. Ps. Resp. 3-4. The Thomases contend that "[b]ecause of the way Rule 736 is written, a debtor cannot

defend against foreclosure during the hearing proceeding or bring up any issues or claims against defendants," but "[a] separate lawsuit allows the debtor to defend against foreclosure in a separate action." *Id.* at 5-6. They maintain that because they filed the present action to stay the expedited foreclosure in state court, they are actually "the defendants—[defending] against the foreclosure action of their home by filing a lawsuit as the only means available under Texas law." *Id.* at 5.

In reply, defendants contend that "because this instant action was not initiated by Defendants, and instead brought by Plaintiffs, 15 U.S.C. § 1640(k)(1) is inapplicable." Ds. Reply 2. Citing *Moor v. Travelers Insurance Co.*, 784 F.2d 632 (5th Cir. 1986), and *Walker v. Nationstar Mortgage LLC*, 2017 WL 588465, at *2 (D. Md. Feb. 13, 2017), defendants maintain that the Thomases' claim under § 1640(k) must be dismissed because the instant case is not a foreclosure action and it is the Thomases who haled defendants into court, making the claim offensive rather than defensive.

C

The court holds that the Thomases do not have a plausible claim under § 1640(k) because they did not raise the claim "as a matter of defense by recoupment or set off." Recoupment entails "[t]he right of a defendant [here, the Thomases], in the same action, to cut down the plaintiff's [here, the lender's] demand." *In re Coxson*, 43 F.3d 189, 193 (5th Cir. 1995). "It is a doctrine of an intrinsically defensive nature founded upon an equitable reason . . . why the plaintiff's claim in equity and good conscience should be reduced." *Pa. R.R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941). Because it is "a purely defensive

- 7 -

procedure," recoupment is available only "so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 206 (5th Cir. 2015). Likewise, "[c]laims of set-off are affirmative defenses," *KWP Fin. I, Inc. v. Harlan*, 100 F.3d 953, 953 (5th Cir. 1996) (per curiam), or "counter demand[s] which a defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action," *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 187-88 (S.D. Tex. 2007) (Rosenthal, J.), *aff'd*, 269 Fed. Appx. 523 (5th Cir. 2008). Thus although "[t]he mere fact that the debtor is the plaintiff in a TILA case does not preclude a finding that the claim was raised defensively," where the lender's claim no longer exists and the claimant does "not seek[] to reduce the sums owed to the lender or to reduce its recovery," the claimant does not raise recoupment as a matter of defense "but is instead seeking affirmative relief for an independent claim." *Id.* (citing *In re Coxson*, 43 F.3d at 194).

The procedural posture of the case and related developments in state court—namely the dismissal of the Tex. R. Civ. P. 736 foreclosure proceeding—demonstrate that the Thomases' claims were raised offensively in pursuit of affirmative relief. *Cf. id.* ("[The] chronology [of the case] makes it clear that Williams's claims for TILA damages were not raised defensively to reduce the amount of the lender defendants' claims, but as an affirmative claim."). "A Rule 736 proceeding is not 'an ordinary lawsuit,' but rather 'a faster, more streamlined alternative to judicial foreclosure.'" *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 383 (5th Cir. 2017) (quoting *Huston v. U.S. Bank Nat'l Ass'n*,

359 S.W.3d 679, 682 (Tex. App. 2011, no pet.)). The rule "provides an exclusive procedure for challenging an order on a Rule 736 application: '*Any challenge* to a Rule 736 order must be made in a suit filed in a separate, independent, original proceeding in a court of competent jurisdiction." *Id.* (quoting Tex. R. Civ. P. 736.8(c)). If the party challenging the foreclosure proceedings or order files suit before 5:00 p.m. on the Monday before the scheduled foreclosure sale, "the Rule 736 proceeding or order is automatically stayed," and after receiving notice of the suit, "the court is required to dismiss the Rule 736 proceeding or vacate the foreclosure order." *Id.* (citing Tex. R. Civ. P. 736.11(a), (c)). In other words, once the party challenging foreclosure files suit against the lender, the foreclosure proceedings are not only stayed, but are dismissed altogether.

Because the foreclosure proceedings relating to the Thomases' residence have been dismissed, their TILA claims cannot be characterized as a "defense" to foreclosure. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 206 (holding that recoupment was available so long as plaintiff's claim survived). Defendants have made no demands that the Thomases might "cut down" by recoupment or "counter demand" by set off. Thus because the damages the Thomases seek do not reduce or set off amounts owed to defendants but instead seek affirmative recovery, the court concludes that their claim was not brought "as a matter of defense by recoupment or set off." *See In re Smith*, 737 F.2d 1549, 1554 (11th Cir. 1984) (holding that where claimant does not seek damages "that should be offset from the amount of debt," the claim is not asserted defensively "but rather . . . is an action for *affirmative relief*[.]").

Because the Thomases' action is offensive—an action for affirmative relief—they cannot obtain the benefit of an extended statute of limitations reserved for use "as a matter of defense by recoupment or set off." *See Wilson III*, 2019 WL 5840325, at *12; *see also Derbabian v. Bank of Am., N.A.*, 587 Fed. Appx. 949, 955 (6th Cir. 2014) (quoting *Bhandari v. Capital One, N.A.*, 2013 WL 1736789, at *5 (N.D. Cal. Apr. 22, 2013)) ("Th[e] [extended] statute of limitations under [§§ 1640(e) and 1640(k)] applies only to actions to defend against a foreclosure including claims for recoupment."). For this reason, any offensive TILA claims relating to the Thomases' 2006 mortgage, including their claims under §§ 1639b and 1639c, have expired even under TILA's longer three-year statute of limitations. *See* § 1640(e) ("Any action under this section with respect to any violation of section . . . 1639b[] or 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation."). The Thomases explicitly plead that the violations giving rise to their § 1640(k)(1) claim relate to their "appli[cation] for the home equity loan in 2006." 4th Am. Compl. 4. Because the Thomases are bringing this claim well beyond the three years provided by statute, the claim is time-barred.[3]

---

[3]"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). This is a case in which the Thomases through their pleading have established that the time-bar applies because § 1640(k)(1) does not apply.

IV

The court now considers whether the Thomases have plausibly pleaded a claim for relief under 12 C.F.R. § 1024.35, as referenced by 12 C.F.R. § 1024.38.

A

Section 1024.38 requires that loan servicers implement reasonable policies and procedures. *See* 12 C.F.R. § 1024.38. The regulation specifically requires servicers to "investigate, respond to, and as appropriate, make corrections in response to complaints," to "[p]rovide a borrower with accurate and timely information . . . in response to the borrower's request for information," and to properly evaluate loss mitigation applications by evaluating a borrower "for all loss mitigation options for which the borrower may be eligible[.]" *Id.* § 1024.38(b)(1)(ii)-(iii), (2)(a)(v). In *Wilson III* the court dismissed the Thomases' § 1024.38 claim, holding that "RESPA does not create a private right of action to enforce Section 1024.38[]." *Wilson III*, 2019 WL 5840325, at *13 (internal quotation marks omitted).

The Thomases now assert § 1024.38 "as evidence of a pattern and practice of non-compliance with RESPA," and they bring a separate claim under § 1024.35. 4th Am. Compl. 5. In support of this new claim, the Thomases cite the Consumer Financial Protection Bureau's ("CFPB") Official Commentary, which explains that under § 1024.38(b)(1)(ii) "[a] servicer's policies and procedures must be reasonably designed to provide for promptly obtaining information from service providers to facilitate the objective of correcting errors . . . *pursuant to section 1024.35.*" *Id.* (emphasis added) (quoting CFPB's Official Staff

- 11 -

Commentary on Regulation X, F.R.R.S. 6-1444.8, 2014 WL 2195776, at *1 (June 2018)). Relying on this commentary, the Thomases "bring claim[s] against Defendants for [v]iolation of [12] C.F.R. [§] 1024.35 (a), (b), [and] (c)," contending that defendants violated these provisions by failing to adequately investigate and respond to their request for information regarding foreclosure proceedings. *Id.* The Thomases allege that they requested confirmation from Ocwen that it notified the law firm to halt foreclosure on April 13, 2017, and that they received an email on May 15, 2017 from Ocwen explaining that the foreclosure had been placed on hold and the law firm had been notified, when, in fact, the foreclosure had not been postponed.

B

Defendants move to dismiss this new claim, contending that "[§] 1024.35 does not provide a private right of action to borrowers." Ds. Mot. 5. They posit that "even if [§] 1024.35 did provide a private right of action," the claim still fails because the Thomases "fail to allege that they sent any written communication to Defendants meeting the requirements of a [qualified written request], that Defendants failed to make a timely response, and that such failure caused them actual damages." *Id.* at 6.

The Thomases respond with competing authority, contending that "[v]iolations of [§] 1024.35, although not specifically referenced as a private cause of action, are subject to 12 U.S.C. [§] 2605(f) which *does provide* borrowers a private right of action to enforce such regulations." Ps. Resp. 10 (citing *Lucas v. New Penn Fin., LLC*, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019)). And the Thomases assert that their "[e]mails to the servicer contained

sufficient information to identify the Thomases and the property and to put defendants on notice that they should not proceed [with the foreclosure]." *Id.* at 9. Because, in their view, defendants did not adequately respond to these emails, the Thomases maintain that they are entitled to statutory and actual damages under 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(f).

In reply, defendants reiterate that the Thomases have failed to allege that they sent a written communication that meets the requirements of a qualified written request. Defendants contend that the Thomases have not pleaded that they sent correspondence to defendants that includes the Thomases' name and account, a statement of reasons for belief that the account was in error, or that the Thomases provided sufficient detail about the information sought, or that the communication was in writing.

C

There is conflicting authority regarding whether 12 C.F.R. § 1024.35 confers a private right of action. The Fifth Circuit has not decided the question, but it has noted that "[a]t least one court has held that 12 C.F.R. § 1024.35, which incorporates violations of § 1024.39, does not provide a private right of action for damages." *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 n.16 (5th Cir. 2016) (per curiam). This court need not decide this question today because the Thomases' reliance on 12 C.F.R. § 1024.35, presumably in place of their dismissed claim under 12 C.F.R. § 1024.38, exceeds the scope of permission given the Thomases in *Wilson III* to replead the claims that the court dismissed *sua sponte*. Because the Thomases attempt to plead a new claim—one that they had three previous opportunities to assert—not a claim that the court in *Wilson III* dismissed *sua sponte*, the

court dismisses this new claim on that basis alone.

And even if the court assumes *arguendo* that § 1024.35 confers a private right of action and that the claim is allowable under *Wilson III*, the claim fails nonetheless because the Thomases have not adequately pleaded that their communication to Ocwen meets the requirements of § 1024.35(a). Section 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *Id.* § 1024.35(a).

In this case, the Thomases have not pleaded that their request was in writing or that it contained any of the required information. Instead, the Thomases allege that "[t]he plaintiffs asked for confirmation that Ocwen had notified the law firm to halt the foreclosure [o]n April 13, 2017" and that Ocwen responded "in an email [o]n May 15, 2017." 4th Am. Compl. 7.[4] Because the Thomases fail to sufficiently allege a communication meeting the

---

[4]The Thomases maintain in their response that "[e]ach request was sent via email and contained sufficient information for the lender to act and provide the information." Ps. Resp. 10. But these allegations are not properly before the court. *See Wilson II,* 2019 WL 2578625, at *4 ("When ruling on a motion to dismiss, however, the court does not consider additional facts that are alleged in a response brief but not in the complaint."). Moreover, even if the court were to consider such new allegations, the Thomases' response does not cure the deficiencies in their pleading because they are too conclusory to credit. *See King v. Life Sch.*, 809 F.Supp.2d 572, 581 (N.D. Tex. 2011) (Ramirez, J.) ("[E]ven construed as a motion to amend, [*pro se*] Plaintiff's response does not provide adequate factual support for her new claims and asserts them only in a vague and conclusory manner."). Assuming that the Thomases did send written requests via email, they have not provided any *factual* allegations regarding the contents of the email that would "enable[] the servicer to identify

requirements of § 1024.35(a), the court dismisses this claim on that alternative basis as well. *See, e.g., Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 768 (N.D. Tex. 2012) (Lynn, J.) (granting motion to dismiss RESPA claim where plaintiff did not allege "that the correspondence included information that enabled Defendant to identify the name and account of the borrower" or "a statement of reasons for the belief that the account was in error.").

V

The court now considers the Thomases' remaining claims under 12 C.F.R. §§ 1024.41, 1024.39, and 1026.36.

A

The Thomases cite a series of violations under various subsections of 12 C.F.R. §§ 1024.41, 1024.39, and 1026.36. To the extent the Thomases intend to plead these claims as a pattern and practice of noncompliance under 12 U.S.C. § 2605(f)(1) and for "dual tracking violations" under 12 C.F.R. § 1024.41, these claims were not dismissed *sua sponte* in *Wilson III*, and, therefore, the Thomases have not been granted leave to replead them. *See Wilson III*, 2019 WL 5840325, at *4 n.6, *5. And because the Thomases plead for the first time a new claim under § 1024.39, this claim exceeds the scope of what *Wilson III* permits them to replead. For that reason alone the court dismisses this new claim.[5]

---

the borrower's mortgage loan account." *See* § 1024.35(a).

[5]Moreover, the Fifth Circuit has expressed doubt as to whether § 1024.39 confers a private right of action, and the Thomases have provided no briefing on the matter. *See*

B

To the extent the Thomases intend to replead their § 1026.36(c) claim, they have failed to state a claim upon which relief can be granted. The Thomases assert that § 1026.36(c) requires a servicer receiving an information request from a borrower to provide the borrower a written response acknowledging receipt within five days of the request. But § 1026.36(c) actually deals with servicing practices related to payments and the application of payments, not to servicing practices related to acknowledgment of information requests. *See* § 1026.36(c). It is § 1024.36, entitled "Requests for information," that requires that a servicer acknowledge receipt of an information request from a borrower.[6] But the Thomases cannot now bring a claim under § 1024.36(c) because they did not attempt to plead such a claim in their third amended complaint. Doing so now would thus exceed the scope of what *Wilson III* permits them to allege in their fourth amended complaint.

Accordingly, the court dismisses the Thomases' claims under 12 C.F.R. §§ 1024.39, 1026.36(c), and 1024.36(c), and disregards the Thomases' repleading as to 12 C.F.R. §

---

*Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2016) (per curiam) (noting, without deciding, that "[§] 1024.39 does not explicitly convey a private right of action to borrowers.").

[6]The Thomases do appear to provide some support for a § 1026.36 claim in their response. *See* Ps. Resp. 10. ("[Defendants] fail[ed] to provide a payment statement in time for plaintiffs to respond to a legitimate buyer request for a sales price in 2016 and . . . twice in October . . . 2019[.]"). But as explained *supra* at note 4, these new factual allegations made in response to a motion to dismiss are not properly before the court. *See Wilson II*, 2019 WL 2578625, at *4. This is especially the case when, as here, *pro se* plaintiffs have had notice that the court will not consider new allegations raised in a response and have had multiple opportunities to replead.

1024.41 and 12 U.S.C. § 2605(f)(1)(B) regarding defendants' alleged "pattern and practice of noncompliance" with RESPA.

VI

The court turns now to the Thomases' request to reconsider its denial of the Thomases' motion to supplement their complaint with damages related to a capital gains tax assessment upon foreclosure.

The Thomases advance largely the same arguments in their request for reconsideration that the court analyzed when denying their motion to supplement in *Wilson III*. At bottom, the Thomases request that the court reconsider its ruling because "*pro se* plaintiffs did not know how to include [the potential of capital gains tax liability as part of their damages]" because they were unaware that Congress would not renew the Mortgage Debt Forgiveness Act. The court considered this and similar lines of argument in detail in *Wilson III*, 2019 WL 5840325, at *16-18. Because the Thomases do not present "substantial reasons for reconsideration," the court declines to reconsider its ruling on the Thomases' motion to supplement. *See Fairchild v. Liberty Indep. Sch. Dist.*, 2008 WL 11426823, at *2 (E.D. Tex. July 11, 2008) (quoting *Louisiana v. Sprint Commc'ns Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)) ("[T]o conserve limited judicial resources, rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration.").

* * *

Accordingly, the court grants defendants' motion, dismisses the Thomases' repleaded claims with prejudice, and declines to reconsider its ruling on the Thomases' motion to supplement their complaint. The Thomases' claims under 12 C.F.R. § 1024.41 and 12 U.S.C. § 2605(f)(1)(B)—as pleaded in their third amended complaint—remain to be litigated.

**SO ORDERED**.

February 5, 2020.

                                                _____
                                                SIDNEY A. FITZWATER
                                                SENIOR JUDGE