IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN LYNN WILSON (THOMAS), et al., | § § § | |
| Plaintiffs, | § § § | |
| VS. | § § | Civil Action No. 3:18-CV-0854-D |
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS5, et al., | § § § § § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Defendants PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH"),

successor by merger to Ocwen Loan Servicing LLC ("Ocwen"), and Deutsche Bank Trust

Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed

Pass-Through Certificates, Series 2006-QS5 ("Deutsche Bank") move for summary judgment

on the remaining claims[1] of *pro se* plaintiffs Susan Lynn Wilson (Thomas) ("Susan") and

---

[1]This action is the subject of four prior opinions. In *Wilson v. Deutsche Bank Trust Co. Americas*, 2019 WL 175078, at *1 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.), the court granted the Fed. R. Civ. P. 12(b)(6) motion to dismiss of Deutsche Bank and Ocwen, and granted the Thomases leave to replead some, but not all, of their claims. In *Wilson v. Deutsche Bank Trust Co. Americas*, 2019 WL 2578625, at *1 (N.D. Tex. June 24, 2019) (Fitzwater, J.), the court granted defendants' Rule 12(b)(6) motion to dismiss the Thomases' second amended complaint and permitted the Thomases to replead. In *Wilson v. Deutsche*

Tommy Thomas under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §

2605(f)(1)(B), and one of its implementing regulations, 12 C.F.R. § 1024.41.  To the extent

necessary, defendants seek to supplement their motion to include additional arguments

related to the Thomases' § 2605(f)(1)(B) claim.  The Thomases oppose the motion.[2]  For the

reasons explained, the court grants defendants' motion for summary judgment and denies

---

*Bank Trust Co. Americas* (*Wilson III*), 2019 WL 5840325, at *1 (N.D. Tex. Nov. 7, 2019)
(Fitzwater, J.), the court granted in part and denied in part defendants' Rule 12(b)(6) motion
to dismiss, and granted plaintiffs leave to replead the claims that the court dismissed *sua
sponte*.  In *Wilson v. Deutsche Bank Trust Co. Americas*, 2020 WL 570915, at *1 (N.D. Tex.
Feb. 5, 2020) (Fitzwater, J.), the court declined to reconsider its ruling in *Wilson III*, denied
the Thomases' motion to supplement their third amended complaint, and granted defendants'
motion to dismiss as to most of the Thomases' claims.  The only claims remaining are those
under 12 C.F.R. § 1024.41 and 12 U.S.C. § 2506(f)(1)(B).  *See id.* at *8.

[2]The Thomases have failed in certain respects to comply with the local civil rules of
this court.  N.D. Tex. Civ. R. 56.6(a) provides that "[a] party who relies on materials in the
record—including depositions, documents, electronically stored information, affidavits,
declarations, stipulations, admissions, interrogatory answers, or other materials—to . . .
oppose a motion for summary judgment must include the materials in an appendix."  Rule
56.6(b)(1) requires the appendix to be "assembled as a self-contained document, separate
from the . . . response and brief," and Rule 56.6(b)(3) also mandates that "[e]ach page of the
appendix must be numbered legibly in the lower, right-hand corner" with the first page
"numbered as '1,' and succeeding pages . . . numbered sequentially through the last page of
the entire appendix[.]"

Instead of filing the required separate appendix in support of their summary judgment
response, the Thomases have combined their response and appendix into one document, with
the appendix consisting of several exhibits labeled both numerically and alphabetically,
without sequential pagination.  *See* Ps. Resp. 24.  The court emphasizes that its local civil
rules are not simply technical niceties that can be disregarded without cost.  They are
designed to conform the briefing and decisional processes to the goal of Rule 1: "to secure
the just, speedy, and inexpensive determination of every action and proceeding."  When, as
here, they are disregarded, there is a cost—in this instance, the burden placed on the court
in deciding the summary judgment motions.  Nevertheless, with considerable effort, the court
has worked with the documents the Thomases have submitted in an effort to decide
defendants' motions fairly and justly to both sides.

without prejudice defendants' request to supplement.

I

The Thomases obtained a loan—which refinanced a purchase-money first lien loan—on March 25, 2006 from Wachovia Mortgage Corporation ("Wachovia").[3]  They signed a Texas Home Equity Note in the original principal amount of $684,000[4] with an interest rate of 6.75%.  Repayment of the note was secured by a Texas Home Equity Security Instrument that granted a security interest in the Thomases' residence.  The Thomases were full-time commission-only licensed real estate professionals, and they allege that the economic recession of 2007-2008 negatively impacted their real estate business as well as their ability to make loan payments.

In 2008 the Thomases were facing default and contacted Wachovia and their loan servicer, Homecomings Financial ("Homecomings"), to seek assistance.  On May 28, 2009 Homecomings notified the Thomases by letter that they might be eligible for the Home

---

[3]In deciding defendants' motion for summary judgment, the court views the evidence in the light most favorable to the Thomases as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).  In their amended reply brief, defendants lodge several objections to the Thomases' supporting evidence.  Because the court in deciding the motion has not relied on the evidence to which defendant object, the court need not address these objections.

[4]The Thomases allege that they "were given a loan of $675,000."  Ps. Resp. 5.  But the loan documents cited in support of defendants' motion for summary judgment demonstrate that the loan was granted in the principal amount of $684,000.00.  *See* Ds. App. 8.

- 3 -

Affordable Modification program.  This program would provide modified monthly payments for a trial period, and, if paid successfully, would permanently modify their loan.  On July 1, 2009 the loan was transferred from Homecomings Financial to a new servicer, GMAC Mortgage Corp. ("GMAC").  On August 8, 2009 the Thomases executed a Foreclosure Repayment Agreement with GMAC.  The agreement evidenced an outstanding debt in excess of $684,000, confirmed a payment default as of December 1, 2007, and explained that $150,509.47 would be required to cure the default at that point.  The agreement explained that "Lender has instituted foreclosure proceedings against the property," but that "Lender agrees to suspend but not terminate foreclosure activity on the default account, provided we receive the executed Agreement and we receive the initial installment in the amount of $2712.50 no later than MONTHLY." Ds. App. 176.  The Thomases made three on-time cash payments to GMAC, but GMAC returned the third payment, canceled the loan modification, and allegedly sued the Thomases for foreclosure.

On February 7, 2013 GMAC notified the Thomases that the servicing of the loan would be transferred to Ocwen.  Litigation ensued.  In 2016, after the Thomases' lawsuit against defendants was dismissed on statute of limitations grounds, defendants initiated a new contact by way of an unsolicited trial loan modification in an amount over $7,700.  The offer was withdrawn when the Thomases did not timely respond because the letter had been sent to a previous law firm.

On March 28, 2017 the Thomases submitted a loss mitigation application to Ocwen,

- 4 -

which they maintain was their first and only loss mitigation application following the transfer of the loan to Ocwen. The following day, on March 29, 2017, defendants filed for expedited foreclosure under Tex. R. Civ. P. 736, and the hearing was set for June 21, 2017. On April 3, 2017 Ocwen sent the Thomases a notice that it had received their request for mortgage assistance, but that the Thomases had not submitted all information that Ocwen needed to review for a loan modification. On April 26, 2017 Ocwen sent confirmation that the Thomases' loss mitigation application was complete. On May 1, 2017 Ocwen sent the Thomases notice that it had completed its review of their loss mitigation application but that it was not able to offer any loan modifications. Ocwen provided other loss mitigation alternatives. The Thomases appealed.

On May 15, 2017 Ocwen informed the Thomases that foreclosure had been placed on a hold. But the foreclosure hearing was never postponed. The Thomases attended the hearing on June 21, 2017, but the hearing was rescheduled because defendants did not appear. The Thomases received a letter dated June 21, 2017 denying their appeal and requesting information regarding representation. Despite not granting the loan modification, Ocwen again offered other loss mitigation options, including a short sale. The Thomases opted for a short sale and prepared a listing agreement for ready buyers, but defendants allegedly failed to provide a list price and thereby prevented the sale.

In late summer 2017, the Thomases continued to prepare for and appear at foreclosure hearings as Ocwen considered the Thomases' loss mitigation application and subsequent

appeals.  A new relationship manager on the Thomases' account allegedly advised them to appeal Ocwen's loan modification decision again, which the Thomases did, but the additional appeal was denied.  The Thomases also assert—without citation to any evidence—that in September, the relationship manager sent an application for a "Hardship Assistance Package," which the Thomases completed and submitted, and that Ocwen denied the request for loan modification again on October 17, 2017.  Ocwen offered short sale again, but defendants allegedly never sent the third party valuation and price to prepare the listing packet.  The Thomases requested an extension of time for the appeal to consider their options and give defendants time to decide an acceptable price for the short sale.  The email cited the foreclosure litigation and the Thomases' need to redirect their time and energy to the expedited foreclosure hearing reset for December 13, 2017.  Defendants did not appear at that hearing, and it was reset.  On March 9, 2018 the Thomases filed the instant suit in state court, which resulted in dismissal of the pending Tex. R. Civ. P. 736 expedited foreclosure proceeding.  Defendants then removed the case to federal court.  The servicing of the Thomases' loan was subsequently transferred to PHH, successor by merger to Ocwen.  The Thomases have made no payments on the loan since October 2009, and the current outstanding balance on the loan exceeds $1,165,000.[5]

_____

[5]The Thomases do not dispute that the loan has been in default since their last payment to GMAC in 2009.  Instead, they dispute the *reason* for the duration of the default.  They contend that "[t]he loan remains in default because the account has been in litigation from 2009-2013" and then again from 2014-2016.  Ps. Resp. 20.  They maintain—without supporting evidence—that they had buyers for the residence in 2016 but that defendants

After the court granted in part a series of motions to dismiss, defendants filed the instant motion for summary judgment on the Thomases' remaining claims. The Thomases timely responded and later moved to supplement their response with additional evidence. The court granted the Thomases' motion, and it also permitted defendants to file an amended reply. The briefing is now complete, and defendants' motion for summary judgment is ripe for decision.

## II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his or her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37

---

prevented the sale by failing to provide them a sale price.

F.3d at 1076; *Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *3 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.).

### III

The court turns first to defendants' motion for summary judgment as to the Thomases' 12 C.F.R. § 1024.41 claim.

### A

RESPA was enacted to protect consumers from "unnecessarily high settlement charges caused by certain abusive [mortgage] practices." 12 U.S.C. § 2601(a); *Moreno v. Summit Mortg. Corp.*, 364 F.3d 574, 576 (5th Cir. 2004). Regulation X implements RESPA, and § 1024.41—entitled "Loss mitigation procedures"—specifically regulates loss mitigation procedures provided by loan servicers. *See* 12 C.F.R. § 1024.41. Section 1024.41 does not require that a servicer "provide any borrower with any specific loss mitigation option." *Id.* § 1024.41(a). Instead, it specifies required procedures, including deadlines for reviewing timely loss mitigation applications, and requirements for notifying borrowers in writing, within 30 days of receipt of a complete loss mitigation application,[6] which loss mitigation options, if any, it will offer the borrower, or the specific reasons for denying a complete loss mitigation application. *Id.* § 1024.41(c)(1)(ii), (d). Section 1024.41 also prohibits

---

[6]Under § 1024.41(b)(1), "[a] complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

foreclosure referrals and sales when borrowers have submitted a loss mitigation application within certain specified time frames. *See id.* § 1024.41(f), (g). Violations of "[§] 1024.41 [are] privately enforceable under § 6(f) of RESPA, 12 U.S.C. § 2605(f)." *Ruiz v. PennyMac Loan Servs., LLC*, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.) (citing 12 C.F.R. § 1024.41(a)).

B

In their third amended complaint, the Thomases assert that defendants violated § 1024.41 by "dual-tracking" their March 28, 2017 loss mitigation application. 3d Am. Compl. 7. They allege that defendants violated § 1024.41(c), (f), and (g) by "mak[ing] the first notice or filing to commence a foreclosure *one day* after submission of the Thomas application on March 28, 2017, before evaluating the borrowers['] application," failing to provide applicable notices, and failing to delay the scheduled expedited foreclosure hearings while their application was under review. *Id.* at 14.

Defendants move for summary judgment on the Thomases' § 1024.41 claim, contending that they complied with all requirements under § 1024.41(c) by confirming that the Thomases' March 28, 2017 loss mitigation application had been submitted for review, communicating that it was denied, explaining the reasons for the denial, offering alternatives, and responding to their appeal. Moreover, they maintain that by responding to this loss mitigation application with a loss mitigation option (short sale), they have "conclusively establishe[d] compliance with [§ 1024.41](c)(1)(ii)." Ds. Br. 12. The Thomases do not

appear in their response to challenge defendants' compliance with subsection (c).[7]  Instead, they focus on defendants' alleged violation of § 1024.41(f) and § 1024.41(g) based on defendants' motion for expedited foreclosure under Tex. R. Civ. P. 736 the day after they received the Thomases' loss mitigation application and defendants' failure to halt expedited foreclosure hearings.

C

1

As a preliminary matter, the court has already explained that the Thomases have not challenged defendants' assertion that they conclusively established compliance with  § 1024.41(c).  Indeed, the Thomases fail to mention this specific subsection in their response and have not offered any evidence to dispute defendants' on this point. Although the Thomases' failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who

---

[7]The Thomases do assert that defendants "*did not properly respond*" to the Thomases' loan modification application, which could be construed as a violation of § 1024.41(c).  Ps. Resp. 16.  But the Thomases' contend that defendants did not properly respond because defendants "[d]id not postpone the hearing," "[f]ailed to halt the scheduled foreclosure hearing" and "failed to notify the Court who had received no information to halt the hearing." *Id.*  These challenges do not relate to defendants' compliance with § 1024.41(c), i.e. whether they evaluated the Thomases for all loss mitigation options available within 30 days, § 1024.41(c)(1)(i), or whether defendants provided adequate notice of such options.  Instead, these objections relate to defendants' alleged noncompliance with § 1024.41(*g*), which governs how and when a servicer may proceed with foreclosure proceedings.

does not respond to the motion is relegated to [his or] her unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2)-(3).

The Thomases have not designated specific facts that would enable a reasonable jury to find in their favor on their § 1024.41 claim based on subsection (c).  The court therefore grants summary judgment as to the Thomases' § 1024.41 claim, to the extent liability is predicated on subsection (c).

2

The Thomases have likewise failed to designate any facts that would permit a reasonable jury to find in their favor as to their § 1024.41(f) claim.  Section 1024.41(f)(1), entitled "Prohibition on foreclosure referral," prohibits a servicer from "mak[ing] the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless" the "borrower's mortgage loan obligation is more than 120 days delinquent."  § 1024.41(f)(1)(i).  Additionally, "[i]f a borrower submits a *complete* loss mitigation application during the pre-foreclosure review period," i.e., before foreclosure referral, a

servicer is likewise prohibited from making the "first notice or filing required by applicable law for any judicial or non-judicial foreclosure process[.]" *Id.* § 1024.41(f)(2) (emphasis added).

The Thomases' loan has been delinquent since at least October 2009, well over the 120-day minimum required to initiate foreclosure under § 1024.41(f)(1). And, although the Thomases submitted their loss mitigation application on March 28, 2017, the day before defendants filed their Tex. R. Civ. P. 736 expedited foreclosure motion, the loss mitigation application was not complete until April 24, 2017, at the earliest.[8] Because § 1024.41(f)'s prohibition on foreclosure referrals is not triggered until a borrower submits a "*complete* loss mitigation application," § 1024.41(f) (emphasis added), and the Thomases' application was not complete until *after* defendants filed for expedited foreclosure, the Thomases have failed

---

[8]The summary judgment evidence would only enable a reasonable jury to find that the Thomases' loss mitigation application was neither "complete" nor "facially complete" on March 28, 2017. Defendants notified the Thomases in writing on April 3, 2017, within 5 business days of receiving the application, that the application was incomplete and that certain information was necessary to complete the application. *See* § 1024.41(b)(2)(i)(B) (requiring determination in writing regarding whether the application is complete or incomplete within 5 days—excluding legal public holidays, Saturdays, and Sundays—of receiving a loss mitigation application). Because the loss mitigation application was incomplete and the servicer notified the Thomases in writing of this fact within 5 business days, the application was neither complete nor facially complete until the Thomases "submi[tted] all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B)[.]" *Id.* § 1024.41(c)(2)(iv). Exhibit 4A of the Thomases' combined response and appendix demonstrates that the Thomases did not submit the necessary documents until April 24, 2017, *see* Ps. Ex. 4A at 37, and defendants' evidence demonstrates that they sent confirmation of the application's completeness on April 26, 2017, *see* Ds. App. 66, almost one month after defendants filed for expedited foreclosure.

to raise a genuine dispute of material fact as to any § 1024.41(f) violation.  *See Searcy v. CitiMortgage, Inc.*, 733 Fed. Appx. 735, 738 (5th Cir. 2018) (per curiam) (noting that § 1024.41(f) "prohibits a servicer from noticing the foreclosure if the borrower submits a *complete* modification application *before* the servicer provides the first notice that foreclosure proceedings are commencing" (emphasis added)); *see also  Kaprantzas v. CitiMortgage, Inc.*, 2018 WL 4852875, at *5 (N.D. Tex. Oct. 5, 2018) (Fitzwater, J.) (granting summary judgment on § 1024.41(f) claim and explaining that the "operative time for analyzing whether duties or protections arise is as of the date the complete loss mitigation application was received").  The court therefore grants defendants' motion for summary judgment on the Thomases' § 1024.41 claim to the extent it is based on a violation of subsection (f).

3

There is likewise no genuine issue of material fact as to any violation of § 1024.41(g). Section 1024.41(g), entitled "Prohibition on foreclosure sale," prohibits a servicer from "mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale" if "a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale."  § 1024.41(g).  In other words, "[§] 1024.41(g) prohibits [only] three things: motions for foreclosure judgment, motions for orders of sale, and foreclosure sales themselves."  *Landau v. RoundPoint Mortg. Servicing*

*Corp.*, 925 F.3d 1365, 1371 (11th Cir. 2019).  As explained by the Consumer Financial

Protection Bureau ("CFPB") official interpretation of 12 C.F.R. § 1024.41(g),

> [n]othing in § 1024.41(g) prevents a servicer from proceeding
> with the foreclosure process, including any publication,
> arbitration, or mediation requirements established by applicable
> law, when the first notice or filing for a foreclosure proceeding
> occurred *before* a servicer receives a complete loss mitigation
> application *so long as any such steps in the foreclosure process*
> *do not cause or directly result in the issuance of a foreclosure*
> *judgment or order of sale, or the conduct of a foreclosure sale,*
> *in violation of § 1024.41.*

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X),

78 Fed. Reg. 10696, 10897-98 (Feb. 14, 2013) (emphasis added).  Thus "[t]he CFPB's

official interpretation of the regulation allows a servicer to proceed with an already-pending

foreclosure process so long as the steps taken, including issuing required publications, do not

result in the issuance of a foreclosure judgment or the conduct of a foreclosure sale."

*Tripicchio v. Seterus, Inc.*, 2016 WL 7374273, at *3 (N.D. Ill. Dec. 20, 2016); *see also*

*Edge-Wilson v. Wells Fargo Bank, N.A.*, 2018 WL 6438359, at *3 (N.D. Cal. Dec. 7, 2018)

("As one court has explained, by its plain language, [§ 1024.41(g)] prohibits a servicer from

mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale.  It

does not prohibit servicers from taking steps to prepare for a foreclosure sale." (internal

quotations marks and citation omitted)).

      The court holds that a Tex. R. Civ. P. 736 expedited foreclosure order does not

constitute a "foreclosure judgment" or "order of sale," or engagement in "the conduct of a

foreclosure sale." This is because a Tex. R. Civ. P. 736 order is "merely an order 'allowing the foreclosure of a [home equity loan].'" *Meachum v. Bank of N.Y. Mellon Tr. Co., N.A.*, 636 Fed. Appx. 210, 213 (5th Cir. 2016) (per curiam) (quoting Tex. R. Civ. P. 736.1(a)). Once the order is obtained, "a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be foreclosed." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 383 (5th Cir. 2017) (quoting Tex. R. Civ. P. 736.9). In other words, Tex. R. Civ. P. 736 "merely provides a procedural device to obtain authorization to proceed with the remedy of foreclosure," *Biedryck v. U.S. Bank National Ass'n*, 2015 WL 2228447, at *5 (Tex. App. May 12, 2015, no pet.) (mem. op.), not a foreclosure judgment, order of sale, or engagement in the conduct of a foreclosure sale. For this reason, as a matter of law, defendants' continued pursuit of a Tex. R. Civ. P. 736 order after receipt of a complete loss mitigation application did not violate § 1024.41(g).

Moreover, because a Tex. R. Civ. P. 736 order does not constitute a foreclosure judgment, order of sale, or engagement in a foreclosure sale, defendants had no duty to halt the Tex. R. Civ. P. 736 hearing under § 1024.41(g). "The prohibitions in § 1024.41(g) against moving for judgment or order of sale or conducting a sale may require a servicer . . . . to instruct counsel promptly not to make a dispositive motion for foreclosure judgment or order of sale," or "avoid a ruling on the motion or issuance of an order of sale" where one is pending. Supplement I to Part 1024—Official Bureau Interpretations, 12 C.F.R. § Pt. 1024, Supp. I (2018). Nevertheless, because a Tex. R. Civ. P. 736 motion does not result in

a dispositive "foreclosure judgment or order of sale," defendants had no obligation to instruct counsel to halt the hearing.[9]

Having concluded that the Thomases have failed to raise a genuine dispute of material fact as to any basis for a violation of § 1024.41, the court grants summary judgment on this claim.

IV

The court turns now to the Thomases' claim for additional damages as a result of a pattern and practice of non-compliance with RESPA under 12 U.S.C. § 2605(f).

A

In their amended reply brief, defendants contend that they "inadvertently omitted briefing specific to Plaintiffs' 12 U.S.C. § 2605(f)(1)(B) claim" and "now seek to supplement their [motion for summary judgment] to include additional arguments and case authority, with respect to Plaintiffs' 12 U.S.C. § 2605(f)(1)(B) claim, if the Court deems it necessary to finally dispose of all of Plaintiffs' claims." Ds. Am. Reply 6. Because the Thomases have failed to raise a fact issue as to any RESPA violation in connection with their loan or as to any recoverable damages, supplemental briefing is not necessary to resolve the Thomases'

---

[9]Even if the court assumes *arguendo* that defendants had a duty to avoid a ruling on the Tex. R. Civ. P. 736 motion, defendants effectively did so by failing to appear. The court did not rule on the motion when defendants failed to appear, but instead rescheduled the hearing. Each order rescheduling the hearing explicitly warned that "Failure of the Applicant to appear at this hearing shall result in dismissal of this case for want of prosecution." Ps. Ex. 1 at 27, 29, 31. Thus, by failing to appear, defendants effectively prevented any ruling on the Tex. R. Civ. P. 736 motion.

final remaining claim and defendants' request is accordingly denied without prejudice.

B

Section 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in a sum equal to "any actual damages to the borrower as a result of the failure," and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A), (B). Nevertheless, "[a] borrower cannot recover 'additional' damages under § 2605(f)(1)(B) without *first recovering* actual damages." *Wirtz v. Specialized Loan Servicing, LLC,* 886 F.3d 713, 719-20 (8th Cir. 2018) (emphasis added); *cf. Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 Fed. Appx. 833, 837 (5th Cir. 2014) (per curiam) ("RESPA allows for fees and expenses *in addition* to actual damages." (citing 12 U.S.C. § 2605(f))). Thus "[f]or RESPA's statutory damages to be 'additional,' there must be other damages to which they are added." *Wirtz,* 886 F.3d at 720. To establish the "actual damages" to which additional damages may be added, "a claimant must show that actual damages *resulted from* a RESPA violation." *Whittier*, 594 Fed. Appx. at 836 (emphasis added). "In other words," the Thomases must show that they "sustained actual damages proximately caused by the alleged RESPA violations." *Stanford v. JPMorgan Chase Bank, Nat'l Ass'n*, 2017 WL 690561, at *3 (E.D. Tex. Jan. 31, 2017), *rec. adopted*, 2017 WL 679659 (E.D. Tex. Feb. 21, 2017); *see also Gooden v. Wells Fargo Bank, N.A.*, 2019 WL 6829047, at *4 (N.D. Tex. Dec. 13, 2019)

- 17 -

(Pittman, J.) (granting summary judgment where the "alleged damages did not result from the alleged wrongful conduct under RESPA").   Here, the Thomases have failed to create a genuine dispute of material fact as to any RESPA violation.[10]   In the absence of such a violation, the court cannot conclude that any part of the Thomases' alleged damages was "proximately caused by" or otherwise "resulted from" noncompliance with RESPA. Indeed, most of the proffered damages are related to "lost time away from . . . work . . . to prepare for and attend scheduled and rescheduled hearings," or medical conditions arising as a result of "having to attend and prepare for multiple hearings"—hearings that the court has already concluded did not violate § 1024.41.[11]  Ps. Resp. 21, 22.  Thus even assuming *arguendo* that

---

[10]In *Wilson III* the court dismissed all of the Thomases' claims with the exception of 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.41.  In dismissing the Thomases' claims under 12 C.F.R. § 1024.38, the court held that "to the extent the Thomases assert 12 C.F.R. § 1024.38 as a claim for relief rather than merely as evidence of Ocwen's alleged pattern and practice of noncompliance with RESPA," the Thomases "failed to plead a plausible claim because RESPA does not create a private right of action to enforce [§] 1024.38." *Wilson III*, 2019 WL 5840325, at *13 (internal quotation marks and citations omitted).  It is not clear whether the Thomases' allegations of a violation of § 1024.38 would be sufficient to constitute a pattern and practice of noncompliance with RESPA, but the court need not decide the issue here.  Because there is no private right of action for damages under § 1024.38, the Thomases cannot establish any "recover[able] actual damages" required by § 2605(f)(1)(B) as a result of such a violation.  *Wirtz*, 886 F.3d at 720 ("In our view, the plain language of § 2605(f)(1)(B) requires a borrower to *recover* actual damages before he can be eligible to *recover* 'additional' statutory damages." (emphasis added)).  Absent any *recoverable* actual damages, the Thomases cannot recover "additional" damages.

[11]Moreover, the Thomases appear to assert actual damages based on filing the present lawsuit.  As the court explained in *Wilson III*, "simply having to file suit [does not] suffice as a harm warranting actual damages[.]"  *Wilson III*, 2019 WL 5840325, at *7 (quoting *Obazee v. Bank of N.Y. Mellon*, 2015 WL 4602971, at *4 (N.D. Tex. July 31, 2015) (Fitzwater, J.)).  Thus even if the court assumes *arguendo* that the Thomases could establish causation between a RESPA violation and their alleged damages, to the extent Susan

the Thomases could raise a fact issue as to defendants' general pattern and practice of noncompliance with RESPA as to *other* borrowers, without proof of any recoverable "actual damages to *the borrower*," i.e., the Thomases, caused by the RESPA violations, the Thomases cannot recover "additional" damages.  § 2605(f)(1)(A), (B) (emphasis added).

*   *   *

For the reasons explained, the court grants defendants' motion for summary judgment and dismisses this action by judgment filed today.

**SO ORDERED**.

June 24, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

predicates damages, including her medical condition, on her preparation for this lawsuit and related filings, such damages would be insufficient to establish "actual damages."